UNITED STATES *v.* SCHRENK & Co. (No. 1738).[1]

1. CONSTRUCTION, PARAGRAPHS 86, 90, AND 95, TARIFF ACT OF 1913—GLASS AND MANUFACTURES OF GLASS.

Polished cylinder glass sheets which have been so far advanced or processed as to lose the character of polished cylinder glass under paragraph 86, tariff act of 1913, have concurrently lost the right of classification under that and paragraph 90, and may be classified under paragraph 95 as "all glass or manufactures of glass   *   *   * not specially provided for," whether or not they have been so far advanced or processed as to constitute "manufactures."

2. WIND SHIELDS—POLISHED CYLINDER GLASS AND MANUFACTURES OF.

Merchandise consisting of two polished cylinder glass sheets glued together, with a rim of adhesive substance to keep dampness from between the sheets, designed for use as material for automobile wind shields, is too far processed or advanced for classification as polished cylinder glass under paragraphs 86 and 90, tariff act of 1913. It is dutiable as "all glass or manufactures of glass   *   *   * or of which glass is the component material of chief value not specially provided for" under paragraph 95.

United States Court of Customs Appeals, February 2, 1917.

APPEAL from Board of United States General Appraisers, Abstract 39748. [Reversed.]

*Bert Hanson,* Assistant Attorney General (*John R. Rafter,* special attorney, of counsel), for the United States.

*Walden & Webster* (*Henry J. Webster* of counsel) for appellees.

[Oral argument Dec. 14, 1916, by Mr. Hanson and Mr. Webster.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise in this case, which is a sample or experimental importation, consists of glass sheets of two sizes, one 12 by 14 and the other 14 by 40 inches, each sheet consisting or made up of two

[1] Reported in T. D. 37013 (32 Treas. Dec., 196).

plates of polished cylinder glass glued together. The sheets before being so glued were transparent, and apparently such is the condition of the merchandise before us. There is also a black rim or finish around the edges composed of an adhesive substance or material designed to, and which it is said does, prevent dampness getting between the two plates.

The collector classified the merchandise as a manufacture of glass under paragraph 95 of the tariff act of 1913. The importers protested, claiming the proper duty to be 3 cents per square foot or other appropriate rate under paragraph 86 of the same act, with 4 per cent ad valorem additional duty under paragraph 90.

At the hearing before the board only one witness testified, and he was called by the importers. In addition to testimony upon which the foregoing facts are founded, he said that as imported these sheets were material for wind shields for automobiles; that they could be used as such without cutting if of the proper size; that they were not of the right size for any such shield then being made, although the year before they were; that none had been sold for wind shields because, with the high rate of duty assessed, they could not compete with domestic manufactures; that they possessed great resisting powers; that they could be used for making jewelry cases and railroad signal lamps; and that the component polished cylinder glass sheets could not be separated except by breaking.

The board found the glass to be slightly obscured or of a smoky color, sustained the protest upon the ground that the merchandise was clearly within the *eo nomine* designation of paragraph 86 of cylinder glass, polished, and because of the color liable to the additional duty of paragraph 90.

The Government appeals.

Paragraph 86 assesses a progressive duty based upon the area in square feet upon cylinder glass, polished, while paragraph 90 imposes an additional ad valorem rate upon cylinder glass, polished or unpolished, when it has been subjected to any one of the various processes therein mentioned, the only ones thereof that are claimed to be applicable here being "obscured" or "colored." Paragraph 86 apparently comtemplates a measurement of only one side or surface to obtain the area.

The first question is whether the merchandise falls within these two paragraphs. We think it does not.

The two component polished cylinder glass sheets, which must have been stock sizes, or cut therefrom, or manufactured to size (the record does not show which), have been selected or assembled for the purpose of making the imported merchandise. One or both have been treated to a coat of transparent glue applied to one surface, the sheets have been brought together in such a manner that the

glue causes them to adhere so strongly that they can not be separated without breaking, giving to the product a much greater power of resistance than either component sheet possessed before the union, thereby increasing or enlarging the scope of their useful or other purposes, and doubtless likewise increasing or enlarging the demand therefor. To insure either the permanency or effectiveness of this union the product has, around the edges, been treated to another preparation.

These processes are not those mentioned in paragraph 90 and we think they have resulted in materially affecting or changing the character or condition of the polished cylinder glass of paragraph 86. Indeed, they may well be said to constitute a manufacture or at least a partial manufacture thereof sufficient to remove them from classification as polished cylinder glass and the importers concede both sides must be measured to obtain the area for the purpose of assessing duty.

It is true that it is not always easy to determine what is a manufacture of an article. The oft-cited case of Tide Water Oil Co. *v.* United States (171 U. S., 210) contains perhaps as satisfactory a dissertation upon this subject as can be found. Speaking of the meaning of the word "manufacture," the court said (at p. 216):

It is now ordinarily used to denote an article upon the material of which labor has been expended to make the finished product. Ordinarily, the article so manufactured takes a different form, or at least subserves a different purpose from the original materials; and usually it is given a different name. Raw materials may be and often are subjected to successive processes of manufacture, each one of which is complete in itself, but several of which may be required to make the final product. Thus logs are first manufactured into boards, planks, joists, scantlings, etc., and then by entirely different processes are fashioned into boxes, furniture, doors, window sashes, trimmings, and the thousand and one articles manufactured wholly or in part of wood. The steel spring of a watch is made ultimately from iron ore, but by a large number of processes or transformations, each successive step in which is a distinct process of manufacture, and for which the article so manufactured receives a different name.

As we view the issue here it is not necessary for the decision of this case to determine whether the processes applied to the polished cylinder glass sheets have or have not resulted in a completed manufacture thereof, because if sufficient to remove them from the scope of paragraph 86 and not of the character to bring them within paragraph 90, they naturally fall under the provisions of paragraph 95 for "all glass or manufactures of glass  *  *  *  or of which glass is the component material of chief value not specially provided for *  *  *."

That is, restated, if the merchandise has lost the character of polished cylinder glass under paragraph 86, it has concurrently lost the right of classification under that and paragraph 90, and, for the purposes of this case at least, falls, as assessed by the collector, under

paragraph 95, whether it be within the provision for "all glass" or for "manufactures of glass" therein mentioned.

While we do not regard the same as controlling, because this is a sample or experimental importation and the record indicates that like merchandise has been little, if any, used in this country, it should be noted that the witness said, referring to the importation, "We call it triplex glass." If that is its name, it affords another reason for the conclusion that it is a manufacture of glass under paragraph 90.

Upon the question of what constitutes a manufacture reference may be had to United States v. Dudley (174 U. S., 670); United States v. Richter (2 Ct. Cust. Appls., 167; T. D. 31680); United States v. Kundtz (6 Ct. Cust. Appls., 501; T. D. 36126); Fenton v. United States (1 Ct. Cust. Appls., 529; T. D. 31546); American Thermo-Ware Co. et al. v. United States (6 Ct. Cust. Appls., 218; T. D. 35465).

There being no dispute about the *facts* in this case, we hold that the Board of General Appraisers misapplied the law and its judgment is therefore *reversed.*