**No. 59303.**—Atlas Export Co. and F. L. Kraemer & Co. *v.* United States, protests 209227–K and 209228–K (New York).

OLIVER, Chief Judge: This case relates to certain square and circular pieces of onyx that are polished on one flat side and on all the edges. All of the pieces in question are approximately seven-eighths of 1 inch in thickness, and either 3½, 6, or 8 inches square, or 5, 6, or 8 inches in diameter. Each piece has a hole drilled in the center.

The merchandise was assessed with duty at the rate of 50 per centum ad valorem under the provision in paragraph 232 (d) of the Tariff Act of 1930 for "onyx, wholly or partly manufactured into monuments, benches, vases, and other articles * * * not specially provided for." Plaintiffs claim that the merchandise is properly dutiable at a combined rate of 14 cents per superficial foot under paragraph 232 (b) of the Tariff Act of 1930 as polished slabs of onyx. Thus, the issue before us is whether these pieces of onyx are partly manufactured, as assessed, or are merely slabs, as claimed.

Two witnesses testified herein. Both appeared on behalf of plaintiffs. Their combined testimony establishes that the pieces of onyx in question are used in the manufacture of several different kinds of articles, i. e., lamps, clock cases, smoking stands, wall tiles, bookends, ashtrays, and that the hole in the center of each of the imported pieces not only advanced the merchandise toward an ultimate use but also is essential for the actual use thereof in any of the finished products where it may be finally employed.

Counsel for plaintiffs, arguing in their brief that the present merchandise should be classified as slabs, contend "that the decision in this case is governed by *Mutual Lamp Manufacturing Company* v. *United States,* 21 C. C. P. A. (Customs) 231, T. D. 46762." This is not so. In the cited case, the imported merchandise consisted of "square and disk-shaped slabs of onyx of various sizes." An examination of the record therein discloses that the drilling of a hole in the center of each slab was done at the importer's plant *after* the merchandise was imported. The merchandise involved herein had reached the advanced condition, with the hole drilled in the center, prior to its importation. Hence, the slabs of onyx involved in the *Mutual Lamp Mfg. Co.* case, *supra,* were materially different from the pieces of onyx under consideration in this case. The cited case is, therefore, clearly distinguishable from the present case.

The word "slab," which plaintiffs seek to apply to the merchandise in question, is defined as follows:

The Century Dictionary:

**slab,** *n.* * * * **3.** In general, a piece of anything solid and compact, heavy, and thin in proportion to its length and breadth, but thick enough not to be pliable, especially when of considerable size.

Webster's New International Dictionary (1948):

**slab,** *n.* **1.** A comparatively thick plate or slice of anything; as, a *slab* of bread, marble, metal, wood, beef, etc.

Knight's American Mechanical Dictionary:

**slab.** * * * **2.** A thin flat piece of stone or marble for a step, mantel, etc.

Funk & Wagnalls New Standard Dictionary (1942):

**slab,** *n.* * * * **2.** A flat plate or piece, as of metal or of stone, having its surfaces plane; a thick plate; as, a *slab* of marble.

The significance of the foregoing definitions to the present issue lies in their consistency to the effect that a "slab" is a flat piece or plate that has not been processed or manipulated in any way. The present merchandise is not within that category. The pieces of onyx under consideration have been subjected to processing that advanced them toward an ultimate use. Furthermore, the drilled hole in the center is essential to any of the uses for which the merchandise has become adaptable. In other words, the drilling of the hole in the center has brought each of the imported pieces to an advanced stage in its development toward an ultimate or predestined product. Such a condition produces a partial manufacture. *United States* v. *N. M. Albert Co., Max Steinmetz,* 41 C. C. P. A. (Customs) 191, C. A. D. 549.

It is not essential that imported merchandise be dedicated to the manufacture of any specific article or class of articles to attain the status of "partly manufactured" for tariff purposes. It is sufficient that the imported commodity shall have been processed to a point where it has a distinctive character different from that possessed by the original material. In *United States* v. *Schrenk & Co.,* 7 Ct. Cust. Appls. 451, T. D. 37013, the merchandise consisted of sheets of polished cylinder glass of two sizes, one 12 by 14 inches, and the other 14 by 40 inches, glued together with transparent glue, causing them "to adhere so strongly that they can not be separated without breaking, giving to the product a much greater power of resistance than either component sheet possessed before the union, thereby increasing or enlarging the scope of their useful or other purposes, and doubtless likewise increasing or enlarging the demand therefore." The record showed that the merchandise could be used for automobile windshields, for making jewelry cases, and for railroad signal lamps. In denying the importer's claim for classification under the *eo nomine* designation of "polished cylinder glass" and sustaining the collector's classification of the merchandise as manufactures of glass, the appellate court held that the processing which had been applied to the polished cylinder glass constituted "a manufacture or at least a partial manufacture," sufficient to remove the merchandise from classification as polished cylinder glass. Applying the same reasoning to the merchandise under consideration, it can be said that the drilling of the hole in the center of the onyx slab affected or changed the character or condition thereof sufficiently to have advanced these imported pieces of onyx to partly manufactured.

For all of the reasons hereinabove set forth, the protests are overruled, and the decision of the collector in each instance is affirmed. Judgment will be rendered accordingly.

DISSENTING OPINION

MOLLISON, Judge: I regret that I am unable to agree with the reasoning and conclusion of my colleagues in this case.

From the following, contained in the brief filed on behalf of the defendant, it seems to be tacitly conceded on the part of the defendant that but for the hole in the center of each of the pieces of onyx at bar they would be properly classifiable as slabs of onyx:

* * * The drilling of the hole in the center of each piece removes them from the category of slabs and advances them into a class of pieces of onyx manufactured for the purpose of making lamps, ash trays, clock faces and other ornamental articles.

From a reading of the decision of our appellate court in the case of *Mutual Lamp Mfg. Co.* v. *United States,* 21 C. C. P. A. (Customs) 231, T. D. 46762,

cited by counsel for both parties herein, it appears that, except for the existence of the hole in the center of each of the pieces of onyx here involved, they are similar in all material respects to the square and disk-shaped pieces of onyx there involved. The pieces in that case were held to be slabs, so that the sole question to be determined herein is whether the drilling of the hole in the pieces prior to importation removed them from the category of slabs and placed them within the category of "onyx * * * partly manufactured into monuments, benches, vases, and other articles * * * not specially provided for."

The majority has stated that the testimony establishes "that the pieces of onyx in question are used in the manufacture of *several different kinds* of articles, i. e., lamps, clock cases, smoking stands, wall tiles, bookends, ashtrays." [Italics not quoted.] The testimony also establishes that, as imported, the pieces are not dedicated to any specific use or to the production of any particular or specific article, *but can be used for any purpose*; further, that pieces of the sizes of those here involved are generally produced with holes; and that, in some cases, the holes are used (presumably in connection with the circular pieces) in the polishing operation.

I am of the opinion that the pieces of onyx before us are merely slabs of onyx with holes in the center. On the record presented, it seems clear that the pieces are simply material from which a variety of onyx articles may be manufactured, but that, as imported, they are not dedicated to the manufacture of any specific article or class of articles. While it is true that it was established that the drilling of the hole was necessary to, and advanced the slab toward, its ultimate use, there is not, in my view, sufficient dedication in the drilling of the hole to the manufacture of any article or class of articles to take the pieces out of the category of materials and the tariff designation "slabs."

I have examined the dictionary and encyclopedia definitions quoted in the decision of the majority and fail to find anything therein to the effect that a "slab" is a flat piece or plate "that has not been processed or manipulated in any way." I think a material may be processed or manipulated and still remain only that material. It must be remembered that the tariff designation in competition with "slabs" is "onyx, wholly or partly manufactured *into monuments, benches, vases, and other articles*," [italics added] which, to my mind, bespeaks an element of dedication wholly lacking in the onyx pieces at bar.

I do not think that the cases of *United States* v. *N. M. Albert Co., Max Steinmetz*, 41 C. C. P. A. (Customs) 191, C. A. D. 549, or *United States* v. *Schrenk & Co.*, 7 Ct. Cust. Appls. 451, T. D. 37013, present analogous situations, either on the law or the facts, to the case at bar. In the *Albert Co.* case, *supra*, the competition was between a provision for "Agates, unmanufactured," and a provision for "Earthy or mineral substances wholly or partly manufactured," and the facts showed that the merchandise, which, as imported, had been partly dyed black, was predestined to be completely dyed black and used as black onyx.

In that case, our appellate court cited and quoted from the decision of the Supreme Court of the United States in the case of *Tide Water Oil Co.* v. *United States*, 171 U. S. 210, to the effect that a partial manufacture is "a mere stage in the development of the material toward *an ultimate and predestined product*" [italics added]. The evidence in the case at bar shows that there is no ultimate and predestined product, or even an ultimate and predestined class of products, involved in connection with the merchandise at bar.

In the *Schrenk & Co.* case, other materials, as well as a relatively complicated manufacturing process, were used to produce the "triplex glass" there involved with the use of polished cylinder glass sheets. The product which emerged had a different name, a different character, and different uses from those possessed by polished cylinder glass. Under such circumstances, the court held that the

polished cylinder glass sheets, with the use of which the imported product had been made, had been so far advanced and processed as to lose the character of polished cylinder glass and to be classifiable as "manufactures of glass," or, at least, as "all glass," if they had not reached the status of "manufactures of glass."

I fail to find such analogy between the complicated processes and result there involved and the simple drilling of a hole, as in the pieces at bar, or between the competing tariff provisions involved there and here, as would constitute that case a controlling authority.

I would sustain the protest claim for duty under the provisions of paragraph 232 (b) of the Tariff Act of 1930.