(C.D. 2281)

SELECTILE Co., INC.
FRANK P. DOW Co., INC., OF L. A., ET AL. } v. UNITED STATES

United States Customs Court, First Division

(Decided September 11, 1961)

*Lawrence & Tuttle* (*Edward N. Glad, Joseph Schwartz,* and *Barnes, Richardson & Colburn* of counsel) for the plaintiffs.

*William H. Orrick, Jr.,* Assistant Attorney General (*Sheila N. Ziff, Murray Sklaroff,* and *Mollie Strum,* trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The ultimate consignee in these cases (Selectile Co., Inc.) imported pieces of marble in flat, rectangular form, having two plane surfaces, and all under 1 inch in thickness. There were three types of pieces of marble in the importations: One type consisted of pieces, 4 inches wide and in lengths from 30 to 60 inches, another of pieces, 16 inches wide and in lengths from 36 to 48 inches, while the third type consisted of pieces of varying dimensions, from 5 feet 2½ inches by 6 feet 3½ inches to 6 feet 7 inches by 6 feet 11 inches. The pieces which were in 4- and 16-inch widths were all polished on one surface and three edges (i.e., one long and two short edges), while the larger pieces were all polished on one surface and on all four edges.

The description of the merchandise may be summarized as rectangular pieces of marble, with two plane surfaces, cut to specific dimensions, and polished on one surface and three or four edges.

All of the pieces of marble were assessed with duty at the rate of 23½ or 22½ per centum ad valorem, depending upon the date of

entry or withdrawal for consumption, under the provision in paragraph 232(d), Tariff Act of 1930, as modified by T.D. 54108, for—

Marble, breccia, and onyx, wholly or partly manufactured into monuments, benches, vases, and other articles, * * * not specially provided for.

The claim in each of the protests is for duty at the rate of 7 cents per superficial foot under the provision in paragraph 232(b) of the said act, as modified by T.D. 52373 and T.D. 52476, for—

Slabs and paving tiles of marble, breccia, or onyx:
  Containing not less than four superficial inches:
  *         *         *         *         *         *         ,

    If polished in whole or in part (whether or not rubbed):
      If not more than one inch in thickness.

The contention of the plaintiffs, and the gist of the evidence offered in their behalf, is that the imported merchandise consisted of slabs of marble within the meaning of that term and within the description of the foregoing provision in paragraph 232(b) and that neither as ordered nor as imported were the slabs in issue dedicated to any specific uses or classes of uses, but that they were pieces of general utility.

The defendant's contention, and the gist of the evidence offered in its behalf, is that when a slab of marble has been cut to specific dimensions and has all or most of its edges polished, it has passed beyond the state of marble in slab form and, for practical purposes, has been dedicated to some use or class of uses which characterize it as marble which has been wholly or partly manufactured into articles.

The fact that the pieces of marble at bar were ordered in specific sizes and states of polishing is explained by evidence offered by the plaintiffs to the effect that experience had shown that pieces of marble in those sizes and states could be most economically used in the business of the ultimate consignee, which was the installation of marble in homes and buildings and the manufacture of marble articles.

Among such installations in which the 4-inch-wide pieces were used were windowsills, thresholds, splashboards, ledges, shelves, aprons for hearths, and returns for fireplace openings. Some were also used, in conjunction with some 16-inch-wide pieces, to make tabletops.

Among installations in which the 16-inch-wide pieces were used were wainscotings, fireplace facings, pullman counters, dressing counters, vanity tops, cabinet tops, and hearths.

In such work with the 4-inch and 16-inch-width pieces, they must often be cut to the correct dimensions for the particular installation, either in length or width, or in both dimensions, and, when the length dimension is altered by cutting, the new edge must be polished.

The larger pieces involved, those with all four edges polished, were used for a variety of purposes, including toilet partitions. In such use, the pieces were cut to size, rubbed to the correct thickness to fit

the hardware used in conjunction therewith, and polished on the second face. None of the larger pieces was used in the condition as imported.

Boiled down, the evidence offered on behalf of the defendant consisted of the firm belief, expressed by men experienced in the marble business, that the cutting to specific dimensions and the polishing of one surface and three or four edges of a rectangular slab of marble thereby dedicate it to some specific use or class of uses.

What that use or class of uses is, according to these witnesses, depends upon the intent of the person who ordered the marble cut and polished, and, in fine, it appears that the 4-inch-width pieces of marble at bar could be used "any place where a 4-inch piece of material would fit," and the same is apparently true of the 16-inch-width pieces, as well as of the larger pieces. It should be said, however, that these witnesses stated that the sizes and states of polishing in which the present merchandise was imported are "standard" for the purposes for which they were used by the ultimate consignee, i.e., as window-sills, ledges, shelves, wainscotings, counter tops, etc.

As it has developed, therefore, the issue appears to be clearly drawn, and is whether rectangular pieces of marble, with two plane surfaces, cut to specific dimensions, and polished on one surface and three or four edges, are marble slabs within the meaning of the language of paragraph 232(b), *supra*, or whether pieces of marble of that description are wholly or partly manufactured marble articles within the meaning of the language of paragraph 232(d), *supra*.

The marble slabs versus wholly or partly manufactured marble articles issue is not new, and recently, particularly, there has been considerable litigation in this and our appellate court involving it. The latest decision on the subject is that reported as *United States* v. *Quality Marble & Granite Co., Arthur Fritz & Co., et al.*, 48 C.C.P.A. (Customs) 50, C.A.D. 763, relied upon by the defendant in the brief filed in its behalf as controlling herein.

In that case, a majority of our appellate court held that where a slab of marble has been so far advanced or manufactured that it may be used as a wholly or partly manufactured *article*, e.g., a tabletop, a lamp base, etc., its proper classification is under the provision for marble, wholly or partly manufactured into articles, rather than under the provision for marble slabs.

In so holding, the majority of our appellate court cited and quoted from its earlier decision in the case of *Atlas Export Co., F. L. Kraemer & Co.* v. *United States*, 43 C.C.P.A. (Customs) 122, C.A.D. 618.

The *Atlas* case involved circular and square pieces of onyx, polished on one flat side and on all the edges, each piece having a hole drilled in its center. A majority of this court found (*Atlas Export Co. and*

*F. L. Kraemer & Co.* v. *United States*, 35 Cust. Ct. 249, Abstract 59303) that the drilled pieces were *not* slabs but were partly manufactured onyx articles. It held that it was unnecessary to this latter determination that the imported pieces be dedicated to the manufacture of any specific article or class of articles, but that it was sufficient if they had been processed to a point where they had "a distinctive character different from that possessed by the original material." The drilled hole, it held, conferred on the pieces such a distinctive character.

It will be noted that the decision of the majority of this court was *not* predicated upon a holding that the pieces of onyx involved were *both* slabs and partly manufactured articles (in which case, the issue would be one of relative specificity), but was predicated upon the holding that there was a point at which the pieces of onyx ceased to be slabs at all and became partly manufactured articles, that point being when the hole was drilled in them.

In its decision on the appeal of the case, our appellate court specifically approved of the conclusion reached by the majority of this court that the pieces involved had passed beyond the stage of being slabs and had been advanced to the point of being partly manufactured articles, but, in so doing, the court indicated that the same result would obtain even if the drilled pieces were considered to be slabs, on the ground that it was the intention of Congress, in cases where there was a competition between the provision for marble or onyx slabs and that for partly manufactured marble or onyx articles, to confer precedence upon the latter.

This view would seem to be in conflict with the holding of the court in the prior case of *Mutual Lamp Mfg. Co.* v. *United States*, 21 C.C.P.A. (Customs) 231, T.D. 46762, where, at page 235, the court noted:

> We think Congress intended that slabs of onyx, within the dimensions stated, should be included in paragraph 232(b) rather than in paragraph 232(d) even though a manufacturing effort had been applied to them to the extent of polishing the same on one face, and on the edges, and even though these slabs, in the condition imported, were each intended for use as definite parts of several different articles, and that it did not contemplate that such merchandise as met these requirements should be regarded as articles within the meaning of paragraph 232(d).

The concept of marble breccia, or onyx in slab and similar forms (e.g., tiles), as being a kind of partly manufactured marble, breccia, or onyx articles was previously expressed by the court in the case of *United States* v. *McBride Studios*, 14 Ct. Cust. Appls. 321, T.D. 41956. That case related to imported marble tiles, and the tariff competition was between a provision for "slabs and paving tiles of marble, breccia, or onyx" and one for "Marble, breccia, onyx, alabaster, and jet, wholly or partly manufactured into monuments, benches, vases, and other articles," which appeared in paragraphs 232 and 233,

respectively, of the Tariff Act of 1922, and which were the direct predecessors of the provisions of the present act here under consideration.

In that case, the court said:

The tiles are unquestionably manufactures of marble and it is certain that they belong to that special class of manufactures of marble known as marble tiles. The importation would, therefore, be dutiable as manufactures of marble if there was no provision for marble tiles and it would be dutiable as marble tiles if there was no provision for manufactures of marble. As the goods are provided for both as manufactures of marble and as marble tiles, that provision which is the more specific must be preferred for the assessment of duty. The designation "marble tiles" is evidently less comprehensive than the designation "marble wholly or partly manufactured into monuments, benches, vases, and other articles" and from that it follows that the importation is more specifically provided for in paragraph 232 than in paragraph 233. Moreover paragraph 233 provides for marble wholly or partly manufactured into articles not specially provided for, whereas paragraph 232 provides for paving tiles of marble of certain sizes without restriction or limitation.

In its decision in the *Atlas* case, *supra*, our appellate court noted that an article, such as a tombstone, tabletop, lamp base, etc., might also properly be described as a slab, and it apparently considered that where pieces of marble were in that situation, they were more narrowly comprehended by the provision for wholly or partly manufactured marble articles, which provision it obviously considered to be the equivalent of naming each of such articles. In this view, the presence of the "not specially provided for" clause in the provision for wholly or partly manufactured marble articles would not control, inasmuch as the *name* of the article, such as tombstone, tabletop, lamp base, etc., would more specifically describe the piece than would the name of its form, i.e., slab. The relative specificity of the applicable provisions being unequal, the "not specially provided for" clause would not control. *Drakenfeld & Co.* v. *United States*, 9 Ct. Cust. Appls. 124, T.D. 37979.

It would follow, therefore, that if the holdings of the *Atlas* and *Mutual* cases can be reconciled, the rule to be derived is that if an imported piece of marble, breccia, or onyx is in such a condition that there is no more precise or exact word to describe it than the word "slab," it takes classification under the provision for slabs, but if it is in such a condition that there is a more precise or exact word to describe it than the word "slab," and that word is the name of an article or class of articles, then it takes classification under the provision for marble articles.

In applying the rule to the facts in the case at bar, it would seem to be unquestionable that, in the provision for marble slabs in paragraph 232(b), Congress provided for slabs in every condition from the rough state to the state in which they are wholly polished. Moreover, it would seem that "wholly" polished includes the edges as well

as the surfaces of the slabs. Obviously, an edge could not be polished unless it had been first cut, so that the provision must also contemplate that the slabs may have cut edges, or, in other words, be cut to size or specific dimensions. To hold otherwise, would be to limit the provision to slabs of marble in random or irregular sizes and shapes, and this is not suggested by anyone, including the defendant, in this case.

Moreover, previous decisions of this and our appellate court have established that there is nothing in the provision for slabs which would suggest that it was the intent of the legislators to exclude slabs therefrom because they were cut to size or were in any particular shape or form. See *Mutual Lamp Mfg. Co.* v. *United States, supra*; *United States* v. *General Shipping & Trading Co., Felix Lorenzoni*, 44 C.C.P.A. (Customs) 168, C.A.D. 656; and *Lyons Transport* v. *United States*, 41 Cust. Ct. 278, C.D. 2052.

Since the physical description of the articles at bar is that of slabs (*cf.* the definitions of "slab" given in the *Mutual* and *Lyons* cases, *supra*), and the record does not show that anything has been done to them except to cut them to size and polish the surfaces and edges in part, both of which operations, by direct expression or necessary implication, are within the scope of advancements permitted to be performed upon slabs by the provisions of paragraph 232(b), *supra*, it must follow that they are slabs within the meaning of the language of that provision.

Are they, at the same time, wholly or partly manufactured marble articles? We think not. Unlike the pieces of onyx in the *Atlas* case, which had a hole drilled in them, they have not had a single thing done to them beyond the things permitted to be done by the provision for slabs. They have only been cut and polished. They have no distinctive characteristic other than those of slabs. The characteristics of size and state of polishing are not those of any article or class of articles, and, at any rate, are not *different* from those of slabs.

The preponderance in weight of the evidence establishes that, in their imported condition, no name of an article or class of article is applicable to them which would characterize them as some sort of marble articles. Any 4-inch-wide piece could be made into a windowsill, threshold, splashboard, ledge, shelf, part of an apron in a hearth or of a tabletop, or a return for a fireplace opening. The very plethora of things into which they could be made indicates that they are none of these things in a state of partial manufacture, but that they are only material, in slab form, with the use of which some, any, or all of these things might be made.

A similar situation obtains in the case of the 16-inch-wide and larger pieces. None of them has any specific name or class of names which

is applicable to them. Plaintiffs' witnesses testified that none of the pieces was ordered for any specific use, and it is to be noted that none of defendant's witnesses was able to identify any piece as being any particular named article or class of articles.

Actually, the testimony of defendant's witnesses to the effect that when *any* piece of marble is cut to specific size and polished on one surface and three or four edges, it is *ipso facto* a marble article, must be largely discounted in the light of the statute as enacted by Congress. If the view of defendant's witnesses were given effect, it would largely, if not wholly, negate the provision for slabs, for no slab could ever be wholly polished and still remain a slab under that view, nor could any slabs be considered to be such when cut to size and polished in part, particularly on the edges.

Yet, Congress must have considered that *some* slabs could be cut to size and wholly polished and still be classifiable as slabs, for it so specifically provided in paragraph 232(b), *supra*. If this be true as to wholly polished slabs, *a fortiori*, Congress must have considered that slabs could be cut to size and partly polished and still remain slabs.

We are of the opinion that, under all of the decided cases and on the facts of record, the pieces of marble at bar are nothing more than slabs and are properly classifiable as such. The protest claim in each case for such classification is, therefore, sustained, and judgment will issue accordingly.