(C.D. 2504)

SELECTILE Co., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided January 13, 1965)

*Lawrence & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*James F. O'Hara* and *Mollie Strum,* trial attorneys), for the defendant.

Before OLIVER and WILSON, Judges

WILSON, Judge: The importation in the case involved consists of certain marble in sizes of 20 by 42 inches and 20 by 48 inches, in thickness of 3/4ths of 1 inch, which were polished on one surface and all four edges (R. 2). The merchandise was classified as marble, wholly or partly manufactured into "other" articles, under paragraph 232(d)

of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, with duty assessment at the rate of 21 per centum ad valorem. Plaintiff claims that the merchandise was properly classifiable as slabs of marble, measuring not less than 4 superficial inches and not more than 1 inch in thickness, at the rate of 7 cents per superficial inch, under the provision of paragraph 232(b) of the same act, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373, supplemented by Presidential proclamation, T.D. 52476.

The pertinent provisions of the statutes under consideration are as follows:

Paragraph 232(d) of the Tariff Act of 1930, as modified by T.D. 54108:

Marble, breccia, and onyx, wholly or partly manufactured into monuments, benches, vases, and other articles, and articles of which these substances or any of them is the component material of chief value, not specially provided for_____ 21% ad val.

Paragraph 232(b) of the Tariff Act of 1930, as modified by T.D. 52373 and T.D. 52476:

Slabs and paving tiles of marble, breccia, or onyx: Containing not less than four superficial inches:

   *        *        *        *        *        *        *

If polished in whole or in part (whether or not rubbed):
     If not more than one inch in thickness_____ 7¢ per superficial ft.

The record in the case of *Selectile Co., Inc., and Frank P. Dow Co., Inc., of L. A., et al.* v. *United States*, 47 Cust. Ct. 66, C. D. 2281, affirmed in *United States* v. *Selectile Co., Inc., Frank P. Dow Co., Inc. of L. A. et al.*, 49 CCPA 116, C.A.D. 805, was incorporated in the case at bar. Also received in evidence were the exhibits of the incorporated record, consisting of nine exhibits introduced by the plaintiffs and one exhibit introduced by the defendant, as follows:

Plaintiffs' exhibit 1 consists of a 4-inch-wide marble slab which, except as to size, is the same in physical characteristics as all the marble slabs involved in the incorporated case. (Incorporated case, R. 13–14.) The surface and polished edges of this exhibit are identical to the slabs involved in the present case (protest 60/10328(B), R. 18–19).

Plaintiffs' illustrative exhibit 2 consists of a picture of a window sill installation made in commercial quantities (incorporated case, R. 25–26). The slab in this exhibit has one edge exposed and a portion of another edge (protest 60/10328(B), R. 24).

Plaintiffs' illustrative exhibit 3 consists of a picture of a threshold installation made in commercial quantities (incorporated record, R.

25–26). Not more than two, and possibly only one edge is exposed in this exhibit (protest 60/10328 (B), R. 24–25).

Plaintiffs' illustrative exhibit 4 consists of a picture of a "book matched" hearth installation as well as a shelf installation (incorporated record, R. 26–28), representing a commercial use of the marble in question (incorporated record, R. 32). Each individual slab in this exhibit has not more than two edges exposed (protest 60/10328 (B), R. 25).

Plaintiffs' illustrative exhibit 5 consists of a picture of a splashboard and Pullman top installation (incorporated case, R. 32–33). Each individual slab in this exhibit has only one exposed edge (protest 60/10328 (B), R. 25).

Plaintiffs' illustrative exhibit 6 consists of a picture of a Pullman counter and dressing top installation (incorporated record, R. 33). The greatest number of exposed edges for any individual slab is two (protest 60/10328 (B), R. 25).

Plaintiffs' illustrative exhibit 7 consists of a picture of a table with a top made of marble slabs (incorporated case, R. 34–35). The greatest number of exposed edges for any individual slab is two (protest 60/10328 (B), R. 25).

Plaintiffs' illustrative exhibit 8 consists of a picture of a wainscoting installation (incorporated record, R. 36). The greatest number of exposed edges for any individual slab is two (protest 60/10328 (B), R. 25).

Plaintiffs' collective exhibit 9 consists of some of Selectile company's shop lists for fabricating jobs for "Pullman tops, splash boards, base, wainscoting, and returns." (Incorporated record, R. 88–91.)

Defendant's collective exhibit A consists of the remaining Selectile company's shop list for installation jobs using polished marble slabs (incorporated record, R. 87).

Mr. James Kay, president and general manager of the plaintiff company, who had previously testified in the incorporated case, stated that his company purchases slabs such as those in question and, after unpacking and cleaning, puts them in stock (R. 5–6). The witness further stated that his testimony with regard to the use of the 20-inch slabs here involved would be the same as the testimony given by him respecting the 16-inch-wide slabs under consideration in the incorporated case. Mr. Kay testified that he had never sold any marble slabs in the 20-inch size, polished on all four edges, as here involved, as tabletops (R. 14); that his firm had never used such slabs without further processing, such as cutting, or otherwise. He further testified that it costs "considerably more" to polish the edges of such slabs in this country than it does to have them polished in the country of exportation.

Plaintiff's second witness, Mr. Edward R. Brewer, vice president of the Selectile Co., Inc., who had also testified in the previous case, also stated that he had never used merchandise such as here involved in the condition as imported, without further processing (R. 22), testifying, in this connection, as follows:

Q. What have you had to do with the marble?

JUDGE WILSON: What have you done to this type of marble?

A. Various additional manufacturing, consisting of cutting to the required sizes, the polishing of edges which are thereby exposed by virtue of the cutting where it is necessary, any additional cutting to raise, to produce notches, or the cutting of oval bowls wherever it may be used for that purpose. Any variety of manufacturing work that's necessary to make it usable for us.

Q. Do you recall the testimony you gave in the previous case, with regard to the uses made by your firm of the slabs which are 16″ wide, and 4″ wide?— A. Yes, I do.

Q. And if the same questions were put to you today with regard to the uses made by your firm of the 20″, would it be the same, or different?—A. They would be similar, with the exception that the 20″ width material would have a greater variety of uses, due to its larger size, than either the 4″ or the 16″ material.

Q. And what would some of these additional uses be?—A. Well, for example, we have, and are able to use the 20″ wide material for the narrower small bowl type of oval pullman, as it's designated, whereas either the 4″ or 16″ width could not be used for that.

Q. What would you have to do to the slab, in order to use it for that purpose?— A. Cut it to the dimensions required, and then cut and finish the oval bowl. (R. 23.)

Mr. Brewer further testified that he had never used merchandise such as is here involved for tabletops (R. 25). The witness further testified, as did the previous witness, that all the marble slab imported by Selectile Co., Inc., after being unpacked, is checked and then put into stock for subsequent use, and that "generally" his company does not import marble slab for any particular job (R. 29).

Mr. Nicola Macino, president of Continental Furniture Manufacturers, Inc., testified on behalf of the defendant. The business of his company includes the manufacture of furniture in which marble is used (R. 30). The witness stated that he was familiar with the merchandise here involved, having imported "close to somewhere in the neighborhood of a million dollars worth in the last ten years" (R. 31). In this connection, Mr. Macino testified that such marble was bought and sold as marble tabletops. He stated that he manufactures table bases and that nothing is done to the marble purchased by him, but that "It just lays on top of the table," being held by its own weight without any fastener (R. 32); that, in some instances, the tables have inlays with a wood border around them, and the marble "sets into the

frame." He stated that it is not necessary to cut the marble tabletops imported by him to fit either inlay or on top (R. 33). On cross-examination, however, Mr. Macino testified that he had never imported or used polished marble slabs in the size of 20 by 42 inches for tabletops and also that he had imported only a "Very small amount" of slabs in the 20- by 48-inch size (R. 35). The witness admitted that the 20- by 48-inch, 7/8ths of 1 inch thick, marble which he did import could be used for "Any purpose that the importer intended it to be used for" (R. 36).

Defendant's witness, Irving Goodman, furniture manufacturer, specializing in the manufacturing of a large variety of different types of table (R. 38), stated that he had used merchandise of the type here imported, polished on one side and on all four edges, as marble tabletops; that no further processing or manufacturing of the tabletop is required, the tabletop staying in place by virtue of its own weight, being placed down on top of a table base (R. 40) ; that, in its condition as imported, merchandise, such as here involved, "is designated or dedicated to table tops" (R. 42). Defendant's witness admitted, however, that such merchandise "could probably be used for other things" (R. 43). He further testified that his company had not made a 20- by 42-inch tabletop out of marble, explaining that, generally speaking, coffee tables used on the west coast are made larger than in the Midwest or in the eastern part of the United States, necessitating the use of a 20- by 48-inch slab, instead of a 20- by 42-inch slab (R. 45).

The issue in the case at bar is whether the involved merchandise is properly dutiable at the relevant rate under paragraph 232(d) of the Tariff Act of 1930, as modified, as marble, wholly or partly manufactured into other articles, or whether it takes classification under paragraph 232(b) of the said act, as modified, at the rate of 7 cents per superficial foot, as slabs of marble, measuring not less than 4 superficial inches and not more than 1 inch in thickness.

In the incorporated case, *supra*, the merchandise consisted of three types of pieces of marble: One type consisted of pieces, 4 inches wide and in lengths from 30 to 60 inches; another of pieces, 16 inches wide and in lengths from 36 to 48 inches; while the third type consisted of pieces of varying dimensions from 5 feet 2½ inches by 6 feet 3½ inches to 6 feet 7 inches by 6 feet 11 inches. The pieces which were in 4- and 16-inch widths were all polished on one surface and three edges (i.e., one long and two short edges), while the larger pieces were all polished on one surface and on all four edges. The testimony therein indicated that the merchandise in question was used in the installation of marble in homes and buildings and in the manufacture of marble articles. The lower court held the merchandise there in-

volved properly classifiable under paragraph 232(b) of the Tariff Act of 1930, as modified, as marble slabs rather than under paragraph 232(d) of the said act, as modified, as wholly or partly manufactured marble articles.

In holding that the pieces of marble there involved were nothing more than slabs and were properly classifiable as such, the lower court, in the *Selectile Co.* case, *supra*, at page 72, stated:

Are they, at the same time, wholly or partly manufactured marble articles? We think not. Unlike the pieces of onyx in the *Atlas* case, which had a hole drilled in them, they have not had a single thing done to them beyond the things permitted to be done by the provision for slabs. They have only been cut and polished. They have no distinctive characteristic other than those of slabs. The characteristics of size and state of polishing are not those of any article or class of articles, and, at any rate, are not *different* from those of slabs.

The preponderance in weight of the evidence establishes that, in their imported condition, no name of an article or class of article is applicable to them which would characterize them as some sort of marble articles. Any 4-inch-wide piece could be made into a window-sill, threshold, splashboard, ledge, shelf, part of an apron in a hearth or of a tabletop, or a return for a fireplace opening. The very plethora of things into which they could be made indicates that they are none of these things in a state of partial manufacture, but that they are only material, in slab form, with the use of which some, any, or all of these things might be made.

A similar situation obtains in the case of the 16-inch-wide and larger pieces. None of them has any specific name or class of names which is applicable to them. * * * [Italics quoted.]

Our appellate court, in the *Selectile Co.* case, C.A.D. 805, *supra*, in affirming the decision of the lower court, at pages 119–120, stated:

* * * we believe that the imported merchandise is nothing more than material which appellees stock in sizes most adaptable to their marble installation business. Under these circumstances, we are of the opinion that the merchandise cannot be considered "articles" as contemplated by paragraph 232(d) of the Tariff Act of 1930. Rather, we believe that the importation should be classified as slabs of marble partly polished, within the purview of paragraph 232(b) of the Tariff Act of 1930.

Appellant argues that the merchandise at bar comes within the purview of paragraph 232(d), inter alia, because of our decision in *United States* v. *Quality Marble & Granite Co., et al.*, 48 CCPA 50, C.A.D. 763. There we held that certain square, rectangular and round pieces of marble should be classified under 232(d). That case is clearly distinguishable from the one before us now. There, 90 per cent of the importations were sold to furniture manufacturers who used them as table tops *in their imported condition*. Here we have pieces of marble used as material by the importers in making various kinds of marble installations in buildings and, furthermore, the importations are not used by the importers in their imported condition. [Italics quoted.]

The Customs Court, in the incorporated case, C.D. 2281, *supra*, discussed a number of cases wherein the question of marble slabs versus

wholly or partly manufactured articles was involved. In *United States v. Quality Marble & Granite Co., Arthur J. Fritz & Co., et al.*, 48 CCPA 50, C.A.D. 763, a majority of our appellate court held that where a slab of marble has been so far advanced or manufactured that it may be used as a wholly or partly manufactured *article*, e.g., a table-top, a lamp base, etc., its proper classification is under the provision for marble, wholly or partly manufactured into articles, rather than under the provision for marble slabs. In so holding, the majority of our appellate court cited and quoted from its earlier decision in the case of *Atlas Export Co., F. L. Kraemer & Co.* v. *United States*, 43 CCPA 122, C.A.D. 618, discussed below.

In the *Atlas* case, *supra*, the merchandise involved circular and square pieces of onyx, polished on one flat side and on all the edges, each piece having a hole drilled in its center. A majority of this court in that case found that the drilled pieces were *not* slabs but were partly manufactured onyx articles. The court therein held that it was unnecessary to its determination that the pieces there imported be dedicated to the manufacture of any specific article or class of articles, but that it was sufficient if they had been processed to a point where they had "a distinctive character different from that possessed by the original material." The drilled hole, it held, conferred on the pieces such a distinctive character.

The decision of the majority of the lower court, in the *Atlas Export Co.* case, 35 Cust. Ct. 249, Abstract 59303, was not predicated upon the issue of relative specificity between the tariff provisions there under consideration. On appeal, our appellate court specifically approved of the conclusion reached by the majority in the lower court that the pieces there involved had passed beyond the stage of being slabs and had advanced to the point of being partly manufactured articles, but, in so holding, the appellate court, C.A.D. 618, indicated that the same result would obtain even if the drilled pieces were considered to be slabs, on the ground that it was the intention of Congress, in cases where there was a competition between a provision for marble or onyx slabs and that for partly manufactured marble or onyx articles, to confer precedence for tariff purposes upon the latter provision. This court, in the incorporated case, C.D. 2281, *supra*, pointed out that the view expressed by the appellate court above noted on the question of the relative specificity of the two provisions here involved would seem to be in conflict with the holding of the court in the prior case of *Mutual Lamp Mfg. Co.* v. *United States*, 21 CCPA 231, T.D. 46762.

At the outset, it appears worthy of note that, in the incorporated case, *supra*, the "Larger" piece of marble (i.e., larger than the 4-inch and 16-inch widths therein involved) were all polished on one surface and

on all four edges. Both this court and our appellate court held, in effect, that the polishing of the larger sizes on all four edges was not sufficient to classify the marble slabs in question as slabs of marble, wholly or partly manufactured. In the case at bar, the imported slabs are also polished on all four edges (R. 2), but this alone does not subject them to classification under paragraph 232(d) of the tariff act.

Further, there is nothing in this record to establish that the slabs here imported had been cut to specific dimensions for specific purposes, in which case they would have passed beyond the state of marble in slab form. On the contrary, the testimony of plaintiff's witnesses indicates that the slabs of marble in question were not imported for any particular job and, after importations, were merely put in stock for future use (R. 29). The polished marble is not sold in the condition in which imported (R. 5). Plaintiff's witnesses testified that these marble slabs had never been used without further processing (R. 14, R. 22–25). While defendant's witness Goodman testified that he had used marble slabs of the sizes here involved as tabletops without further processing and that such slabs are dedicated to use as tabletops (R. 40–42), he agreed that slabs such as here imported could be used for other things, but stated that he was not qualified to state the other things for which these slabs of marble could be used (R. 43). In this connection, we deem significant in our present determination the reasoning of the court in the incorporated case as previously indicated, where, in speaking of the marble slabs there involved, the court (C.D. 2281), page 72, stated:

* * * The very plethora of these things into which they could be made indicates that they are none of these things in a state of partial manufacture, but that they are only material, in slab form, with the use of which some, any, or all of these things might be made.

In our opinion, the record establishes that the slabs of marble under consideration are not marble slabs, wholly or partly manufactured into tabletops, but are merely stock material of marble which requires further processing or manipulation for further use in the manufacture of various articles. Like the slabs involved in the incorporated case, the slabs here imported "have no distinctive characteristic other than those of slabs." Accordingly, they are properly classifiable under paragraph 232(b) of the Tariff Act of 1930, as modified, at the rate of 7 cents per superficial foot, as slabs of marble, containing not less than 4 superficial inches, polished in whole or in part, and not more than 1 inch in thickness, as claimed. The protest is sustained.

Judgment will be rendered accordingly.