(C.D. 2576)

Los Angeles Tile Jobbers *v.* United States

## United States Customs Court, First Division

(Decided September 28, 1965)

*Glad & Tuttle* (*Edward N. Glad, Hadley King,* and *Earl R. Lidstrom* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Morris Braverman* and *Herbert L. Warren,* trial attorneys), for the defendant.

Before OLIVER, WILSON, AND NICHOLS, Judges

NICHOLS, Judge: The merchandise involved in this case is described on the invoice as terrazzo floor tiles and was assessed with duty at 24 per centum ad valorem under paragraph 202(a) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, supplemented by T.D. 52857, as floor tiles valued over 40 cents per square foot, wholly or in part of cement. It is claimed in the amendment to the protest that it is properly dutiable at 8 cents per superficial foot under paragraph 232(b) of said tariff act, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373, supplemented by T.D. 52476, as paving tile of marble. A claim in the original protest for classification under paragraph 214 was not pursued and is deemed abandoned.

Paragraph 202(a), as originally enacted, provided for:

Tiles, unglazed, glazed, ornamented, hand painted, enameled, vitrified, semi-vitrified, decorated, encaustic, ceramic mosaic, flint, spar, embossed, gold decorated, grooved or corrugated, and all other earthen tiles and tiling by whatever name known (except pill tiles, but including tiles wholly or in part of (cement), * * *.

As modified by the Torquay protocol, *supra,* it provides:

Tiles, floor and wall, however provided for in paragraph 202(a), Tariff Act of 1930 (except quarries or quarry tiles) :

| * | * | * | * | * | * | * |

    Valued over 40 cents per square foot, and wholly or in part
      of cement_____ 24% ad val.

Paragraph 232(b), as modified by the Annecy protocol, *supra,* provides:

Slabs and paving tiles of marble, breccia, or onyx :
  Containing not less than four superficial inches :

| * | * | * | * | * | * | * |

    If polished in whole or in part (whether or not rubbed) :

| * | * | * | * | * | * | * |

      If more than one inch and not more than one
        and one-half inches in thickness_____ 8¢ per superficial ft.

At the trial, Andrew J. Campbell, president of Los Angeles Tile Jobbers, Inc., the plaintiff herein, testified as follows: He has been with the firm since 1925, during which time he has handled ceramic and marble tile, glass mosaic tile, and other tile. For the past 8 years, he has handled earthen tile and tiles wholly or in part of cement, and has sold marble slabs and tiles and tiles other than marble on a national basis. He has been familiar with the imported merchandise for the same period, having been introduced by a former importer to the manufacturer. He produced a sample which had been cut from the full-sized imported article but which was otherwise identical. This was received in evidence as plaintiff's exhibit 1.

The sample consists of a rectangular block, approximately 4 inches long, 2¾ inches wide, and 1¼ inches deep. It appears to be composed of irregular roundish marble pieces embedded in a whitish matrix which overlays a grayish substance. The witness stated that the merchandise is called spheroidal precast marble mosaic tile. He also produced a sample of a type of precast tile, called Palladiana, which was received in evidence as plaintiff's illustrative exhibit 2. It is a larger piece, 12 inches long, 3¾ inches wide, and 1⅛ inches deep. It appears to consist of irregular marble pieces in a brownish matrix which overlays a grayish material.

The witness said that he had seen the manufacturing process in Italy and described it as follows: The marble is obtained from quarry waste or marble slabs. The pieces are either tumbled in a tumbling machine with steel balls or broken by machinery. They are then placed in the bottom of a steel hydraulic mold and are surrounded by a matrix, consisting of colored sand and cement, talc, and ground marble dust. The darker portion of the matrix consists of sand and cement matrix binder and ground marble chips. All this material is pressed on a hydraulic machine to a very tight degree. It is then taken out of the mold, put on wooden racks, and immersed in a tank of water for approximately 28 days to cure the cement. After that, it is ground and polished. Exhibit 1 has a bright miro polish finish and exhibit 2 a honed finish.

Mr. Campbell testified that exhibits 1 and 2 are used for flooring and that the same product with miro polishing is used for vertical facades of buildings and wall trimmings. They are set into the flooring in a sand cement setting bed, reinforced with wire mesh or concrete, with about an eighth of an inch coat of pure cement over the setting bed to bind the tiles to the bed. They are applied to a vertical surface in a similar manner. Solid marble paving tiles of the same size are also set in the same way.

According to the witness, exhibits 1 and 2 are sold in the United States under the trademark name "Lake Como Marble Mosaic Tile."

An advertising folder was received in evidence as plaintiff's illustrative exhibit 3.

Mr. Campbell also produced a sample of what he considered to be an earthen tile, wholly or in part of cement, which he said was commonly known as a Mexican cement tile. It was received in evidence as plaintiff's illustrative exhibit 4. The witness said it was made of sand cement, which is strictly and wholly an earthenware material. The top part is composed of a green material and the bottom of a grayish material. According to the witness, the bottom part is made of almost the same material as the base of exhibit 1, except for the absence of marble chips in exhibit 4. Without the presence of the chips in exhibit 1, the marble spheroidal pieces would fall out of the binder.

It was stipulated by counsel that the tiles involved herein were in part of cement. Counsel for plaintiff also offered to stipulate that they were not earthen tiles, but the Government did not agree. The witness then testified that marble paving tile is not considered to be an earthen floor or wall tile by those in the trade, and that earthen tiles are similar to exhibit 4. He said that his product, exhibits 1 and 2, is mainly of marble and is different from earthen tiles, such as exhibit 4.

Plaintiff's second witness was Albert Wichert, general manager of the commercial tile department of Selectile Co., Inc. He has been in the tile business since 1946 and has handled marble tiles and marble slabs. The term "slab," as used in the marble industry, refers to large pieces of marble, used for the facing of buildings, and the term "tile" to marble cut in smaller pieces and used similarly to regular tile. Slabs and tiles are set in a different fashion. The merchandise before the court is a tile, not a slab.

The witness said there must be a hundred different types of tile, such as unglazed ceramic mosaic, porcelain, natural clay, glazed ceramic, regular glazed wall tile, and those made by the dust press method, the extruded method. He defined earthen tile as a product of clay fired under a high degree of temperature with glaze. He said that exhibit 4 was a cement tile and he considered it an earthen tile, although it had not been fired, but had been manufactured under hydraulic pressure. He did not know of any other tiles which were not fired and which fell within the category of earthen tile.

The witness had handled precast marble tile similar to exhibits 1 and 2 but had never referred to it as earthen tile because "It is just not in our sense of the word earthen. It is not an earthen product." He said that exhibit 1 appeared to be composed of a cement and marble matrix combination but not of the same type of sand and cement that is in earthen tiles. He admitted, however, that the base of exhibit 1

and the base of exhibit 4 were similar and that the base of exhibit 1 was earthen.

According to the witness, precast marble tiles are used for the paving of floor areas and for wall surfacing, and are set with sand and cement. Tiles made wholly of marble are applied in the same manner.

Subsequently, there was received in evidence the deposition of Pietro Giovannini, taken before the American vice consul at Florence, Italy. Mr. Giovannini testified that the precast marble spheroidal floor tiles and the precast marble Palladiana floor tiles that he sells are composed of cement, marble, marble dust, and sand. "Cement costs Lire 270 per square meter, marble costs Lire 1,400 per square meter for the precast marble spheroidal tiles and Lire 1,300 per square meter for the precast marble Palladiana floor tiles; marble dust costs Lire 100 per square meter and sand costs Lire 120 per square meter."

It thus appears that the imported merchandise consists of tiles in part of cement but in chief value of marble. Plaintiff claims that although these tiles are in part of cement, they are not classifiable under paragraph 202(a), *supra*, on the ground that they are not earthen tiles. According to the record, exhibit 4 (the cement tile) is regarded as an earthen tile, but the witnesses did not consider the imported tile to be earthen, although they admitted that the matrix was composed of a mixture of sand and cement and was similar to that of exhibit 4, except for the presence of marble chips. Mr. Wichert said that cement tiles were manufactured under hydraulic pressure but were, nevertheless, earthen, although he defined earthen tile as a clay product which had been fired. The instant merchandise is also manufactured under hydraulic pressure. Does it fall within the language of paragraph 202(a)?

A reading of the statute here involved, paragraph 202(a), as originally enacted, *supra*, reveals an intent to provide for a wide variety of tiles which were specifically enumerated and for "all other earthen tiles and tiling by whatever name known (* * * including tiles wholly or in part of cement)." It seems clear that Congress thought of earthen tiles, no matter what they were called, in the trade or elsewhere, as including tiles made with cement. Since cement is earthen, this definition is not far-fetched. Exhibit 4, which the parties agreed was properly classed under paragraph 202(a) differs from the merchandise at bar primarily if not wholly in that it contains no marble. If it is earthen the basis for denying the merchandise at bar to be earthen is not apparent. The cement in the imported tile is substantial, although not in chief value, and is essential to the product. Without it, there would in fact be no tile at all, but merely a collection of marble pieces. No *de minimis* question arises. (*Cf. John S. Connor, Inc. v. United States*, 54 Cust. Ct. 213, C.D. 2536.) We conclude

that the merchandise before us falls within the provision for earthen tile by whatever name known, including tiles in part of cement.

The next question is whether the imported tile, which is in chief value of marble, is a paving tile of marble within the meaning of paragraph 232(b), *supra*, and is, therefore, more specifically provided for thereunder. (*Cf. International Expediters, Inc.* v. *United States*, 41 CCPA 156, C.A.D. 543.)

The general rule is that where a statute provides for an article of a specified material without declaring to what extent it must be composed of that material, it is sufficient if it is in chief value of such material, unless it appears from the context of the statute that Congress intended to include only articles substantially wholly of that material. *American Shipping Co., Husney & Co.* v. *United States,* 22 CCPA 72, 74, T.D. 47064; *United States* v. *Guy B. Barham Co., for University Shoppe,* 26 CCPA 83, 84, T.D. 49614; *United States* v. *Linen Thread Co.,* 13 Ct. Cust. Appls. 359, 360–361, T.D. 41257; *Louisville Bedding Co.* v. *United States,* 14 Ct. Cust. Appls. 328, 329–330, T.D. 41958.

The provision here in issue covers "slabs and paving tiles of marble." A slab is defined as a comparatively thick plate or slice of anything. Webster's New International Dictionary, 1953 edition. Many cases have been before the courts where the question has been whether certain articles were "slabs" or "tiles" or "manufactures" of marble, but none of them involved articles composed of marble manufactured with other material. *C. J. Tower & Sons of Buffalo, Inc.* v. *United States,* 54 Cust. Ct. 15, C.D. 2502; *R. L. Swearer Company* v. *United States,* 54 Cust. Ct. 24, C.D. 2503; *Selectile Co., Inc.* v. *United States,* 54 Cust. Ct. 30, C.D. 2504, and cases cited in those decisions. On the other hand, in *U. Luisi & Co.* v. *United States,* 72 Treas. Dec. 362, T.D. 49180, articles, consisting of two flat pieces or slabs of marble, joined together with plaster of paris, were held not to be "slabs." The court quoted several definitions of "slabs" and held that the term comprehended a solid piece of material and not a built-up one.

In the instant case, the witness Campbell stated that he handled marble paving tiles which are solid slabs of marble and distinguished the imported merchandise by the fact that it was precast. He called it marble mosaic tile. The witness Wichert said that the term "marble slab" referred to large pieces of marble and the term "marble tile" to marble, cut in small pieces and used as regular tile. He also distinguished between marble tile "in the pure form" and precast marble tile.

Paragraph 232 of the Tariff Act of 1930 contains four subparagraphs, providing for marble, breccia, and onyx progressively from

block form to articles of which these substances or any of them is the component material of chief value. A reading of the paragraph in its entirety makes it plain that the Congress intended the first three subparagraphs to include marble, breccia, and onyx *per se* in various unmixed forms, and that only the fourth subparagraph covered articles, manufactured of marble and other substances. Subparagraph (c) provides specifically for mosaic cubes of marble, at one rate, if loose, and at another, if attached to paper. From this, it is logical to infer that mosaic cubes made up into a final form, as a tile, would not be classifiable as mosaic cubes but as a manufacture of marble.

The Summary of Tariff Information, 1929, pages 564–565, describes marble and what it is used for and states:

Rough marble in irregular blocks unsuitable for ordinary commercial dressing or finishing is used as riprap or is crushed into a form used in road surfacing material, in stucco, in poultry grit and in steel and other industries as a fluxing material. *Terrazzo (marble crushed largely into small cubicle forms) is used to some extent in conjunction with cement for flooring.* In a pulverized form (marble flour) it is sold for agricultural use, and as a filler in putty, paint, soap, rubber, and chemicals. [Emphasis supplied.]

The Summaries of Tariff Information, 1948, volume 2, part II, page 150, states:

Mosaic cubes are small, usually square, pieces of colored marble, used for flooring * * *. Mosaic cubes are generally mounted on paper or other material according to patterns and ornamental designs of the architect and tamped into a cement base; the mosaic floor is then ground and polished.

The articles here involved are manufactured of pieces of marble (larger, but more or less similar to mosaic cubes or terrazzo), in a matrix on a cement base. Such an article is not marble, in any form provided for in the first three subparagraphs of paragraph 232, but is a manufacture of marble and cement. Plaintiff makes no claim under paragraph 232(d) and clearly it would be less specific than 202(a).

The cases cited by plaintiff do not indicate that Congress intended the term "paving tiles of marble" to include articles composed of marble and another material. In *A. Roussel et al.* v. *United States*, T.D. 13949, G.A. 2054, it was held that small marble mosaic cubes were dutiable by similitude to marble paving tiles. No issue of similitude can arise herein. In *C. D. Jackson & Co.* v. *United States*, T.D. 18626, G.A. 4024, it was held that rectangular pieces of marble, 10 by 20 by 7/8 inches, were not slabs of marble, but paving tiles of marble, citing *United States* v. *Davis*, 54 Fed. 147. In that case, the court discussed at length the meaning of the term "tile" and pointed out that tiles have been made from many different materials. It held that, under the Tariff Act of 1890, paving tiles of burnt earth or clay were

covered by paragraph 94 and those made of marble by paragraph 124. It stated (p. 151):

* * * Articles of importation which, by reason of the material of which they are composed and the use to which they are to be put, are fairly described by the phrase "marble paving tiles," must be so classed, even though there may be other general classifications in the act of congress which might include them. As we have seen from the authorities already cited, a paving tile, within the meaning of the act of congress of 1890, is a piece of burned earth or clay or of marble, suitable for and intended to be used as a covering for a floor, a pavement, or the like.

It concluded that pieces of marble from $\frac{3}{8}$ to $\frac{7}{8}$ of an inch in length and breadth were marble paving tiles, since Congress did not make size an element of definition. In all of these cases, the articles were wholly of marble.

In our view, the provision in paragraph 232(b), *supra*, for paving tiles of marble does not include tiles not wholly of marble or substantially so and does not include tiles composed of marble pieces in a matrix on a cement base, although in chief value of marble. Since the imported articles are, in fact, in part of cement, they are properly classifiable under paragraph 202(a), *supra*, where they are designated *eo nomine*, as floor and wall tiles in part of cement. The protest is overruled and judgment will be rendered for the defendant.