(C.D. 2503)

R. L. SWEARER COMPANY *v.* UNITED STATES

United States Customs Court, First Division

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Earl R. Lidstrom* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

Before OLIVER, WILSON, and NICHOLS, Judges

NICHOLS, Judge: The merchandise involved in these cases, consolidated at the trial, described on the entries as marble flooring tiles, polished, not over 1 inch thick, was imported from Italy and entered at the port of Pittsburgh on December 5, 1956, and March 20, 1957, respectively. It was assessed with duty at 23½ per centum ad valorem under paragraph 232(d) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as marble, wholly or partly manufactured into articles, not specially provided for. It is claimed that the merchandise is properly dutiable at 7 cents per superficial foot under paragraph 232(b) of said tariff act, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373, supplemented by T.D. 52476, as slabs of marble, polished in whole or in part.

Paragraph 232, as so modified, provides as follows:

The only witness called at the trial was Otto Winterich, president of John W. Winterich & Associates, the importer of the merchandise. He testified as follows: The business of his firm is the installation of marble, woodwork, and stained glass in church interiors. He has been with the company since November 1945 and supervises the designing, layout, fabrication, and installation of work. This includes purchasing, estimating, supervision, and inspection. In his business, flooring is customarily laid out and installed in accordance with a certain design or pattern. In purchasing the marble, an effort is made to order the sizes required to prevent waste. However, additional material is normally ordered, as damage may sometimes be so great that the pieces cannot be repaired. Any excess remaining after installation is put into inventory. The witness was familiar with the merchandise involved herein and stated that it consisted of marble paving tiles or marble flooring tiles, polished on the face surfaces, and that it was installed in St. Paul's Cathedral, Pittsburgh.

The shipment covered by protest No. 59/34582 was installed in the sanctuary of the upper part of the Cathedral as flooring. It consisted of 475 square and rectangular pieces, in various colors and dimensions. Blueprints of the floor had originally been prepared by the architect, but the witness' firm made a larger drawing from them, called a shop drawing. The pieces were put together in accordance with this design. The imported pieces were all numbered to indicate their location and as a system for identifying them. These same numbers appeared on the plan or design. The pieces were used primarily in their condition as imported with cutting done only for fitting purposes. None of the pieces were eased, bevelled, or curved along the edges of the floor. Colored slides showing the floor were received in evidence as defendant's exhibits C and D.

The marble covered by protest No. 325940–K formed the sanctuary floor in the lower chapel at the same Cathedral. Two hundred and thirty-six to two hundred and forty tiles were imported, but a fewer number were required for the job. The tiles were approximately 2 feet 6 inches square and from $\frac{3}{4}$ to $\frac{7}{8}$ of an inch thick. They had letters on them to distinguish the two different types of marble included. One type was a reddish brown and the other a pinkish markle. There were blueprints and a design with respect to this floor also. At first, the witness said that the design was a checkerboard pattern, but, after looking at a slide received in evidence as defendant's exhibit A, he said that the reddish brown marble was used solidly in an area running from the altar rail to the altar. In this slide and in another, received in evidence as defendant's exhibit B, the lighter marble appears to be on each side of the darker center portion. The marble involved here was

only that used on the floor from the rail to the altar, and did not include the raised portion, nor the altar, nor that in front of the rail. The edging of the sanctuary floor was "eased," but the witness did not know whether that had been done on the job or before importation. "Easing" consists of rubbing down sharp edges with emery cloth, to prevent chipping. It does not destroy the usefulness of a piece for any alternate uses. The floor was set down in the condition as imported, but to make it fit there was some cutting done.

According to the witness, excess pieces were ordered in both instances and those left over were put into inventory. The witness said that some of those pieces may have been used since importation but he was not sure and was unable to state how or where they had been used.

Mr. Winterich testified that marble of the kind, shape, and size involved herein has other uses. It can be used for any type of floor, or for walls or wainscots. Some of it could be used to make altars or other pieces of marble. Even if the pieces had been eased or bevelled, they could be used for other purposes, as they could be butted together or cut. A comparatively long narrow piece of marble could be used for a base on the wall.

The issue in this case is whether the merchandise was properly classified by the collector as marble, wholly or partly manufactured into articles, or whether it is merely marble slabs or paving tiles, dutiable under paragraph 232(b) of the tariff act, as modified. The collector's classification is presumptively correct, and the burden rests upon plaintiff to establish that it is erroneous and that its own claimed classification is correct. *Dorward & Sons Co. et al.* v. *United States*, 40 CCPA 159, 162, C.A.D. 512; *Davies, Turner & Co.* v. *United States*, 40 CCPA 193, 194, C.A.D. 517; *United States* v. *G. Klein & Son*, 42 CCPA 73, 76, C.A.D. 574.

It is obvious that the imported articles, taken separately, are tiles or slabs, but this does not dispose of the question before us. See *Atlas Export Co., F. L. Kraemer & Co.* v. *United States*, 43 CCPA 122, C.A.D. 618, where the court said (pp. 126-127):

> * * * it is abundantly clear that some of the items which Congress considered to be covered by paragraph 232(d) might still be called "slabs" in the general meaning of that term. For example, it can hardly be denied that partly manufactured marble benches, specifically mentioned in paragraph 232(d), would consist of "slabs." The same is true of the table tops, tombstones, and lamp bases, mentioned in the *Summary of Tariff Information.* * * *

As we stated in *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 54 Cust. Ct. 15, C.D. 2502, decided herewith:

> The two competing provisions of the Tariff Act of 1930 thus may, in turn, according to extrinsic circumstances, cover merchandise that, viewed by itself alone,

could be identical. Customs officers were required to take such circumstances into account and classify accordingly. Within the limits imposed by the rules of evidence, so must this court. Our decision on one entry is not *res judicata* for any other. Careful scrutiny of what the witnesses said in each case involving marble slabs may alone provide explanation for differences in the result reached. Under such circumstances, it is not surprising that the efforts hitherto of our appellate court and this court have not up to now made it possible to classify marble slabs without controversy and litigation. That they in fact have not, is evidenced by the instant case and many others now on the calendars of this court.

Reference is made to our discussion there of the following cases: *United States* v. *Selectile Co., Inc., et al.*, 49 CCPA 116, C.A.D. 805; *United States* v. *General Shipping & Trading Co. et al.*, 44 CCPA 168, C.A.D. 656; *The A. W. Fenton Co., Inc.* v. *United States*, 44 Cust. Ct. 16, C.D. 2147; *United States* v. *Quality Marble & Granite Co. et al.*, 48 CCPA 50, C.A.D. 763; *Atlas Export Co., F. L. Kraemer & Co.* v. *United States, supra.* We concluded from these cases that—

* * * the most significant factors in determining whether the imported merchandise consists merely of marble slabs or marble, wholly or partly manufactured into articles, are whether the imported slabs are assigned and were cut to occupy specific places in a detailed design; whether or not the merchandise as imported is of general utility and is equally available in various places where marble can be used, not just in a particular design; whether it is used in its condition as imported or must be further cut or shaped on the job; whether the last manufacturing step has been performed on the article *per se* prior to importation and there is nothing left to do but assemble it with other articles; whether excess pieces over those required for the job were imported.

In the instant case, plaintiff questions whether there can be such a thing as a knocked-down floor, quoting from *United States* v. *McBride Studios*, 14 Ct. Cust. Appls. 321, 322, T.D. 41956:

* * * In order to constitute a knocked-down article its parts when assembled must make an entirety, an article ready for use. A knocked-down tile floor, if there be such a thing, is, therefore, a floor the component tiles of which are cut to shape and size for a particular floor and create a complete floor when put in place. * * *

In that case, the tiles consisted of octagonal pieces cut to size and imported for the purpose of repairing an old church floor. The court held that since the tiles were not imported for the construction of any particular floor but for the repair of one already constructed, they were classifiable as marble tiles rather than as manufactures of marble.

On the other hand, in a case arising under the Tariff Act of 1897, it was held that merchandise invoiced as "one marble font floor" was classifiable under the provision for manufactures of marble rather than that for paving tiles of marble. *Kronfeld, Saunders & Co.* v. *United States*, 9 Treas. Dec. 849, T.D. 26366. The pieces were cut to

size, rubbed and polished on one surface, and were designed and used for a floor upon which to stand a baptismal font. The court stated (p. 850):

> We think, therefore, that since the pieces of marble have been especially made upon order of particular dimensions and so as to be used for a specific purpose, not separately but as a whole, they are excluded from the provisions of paragraph 114 and were properly classified under paragraph 115.

Both of these cases were discussed in *U. Luisi & Co.* v. *United States*, 72 Treas. Dec. 362, T.D. 49180. The articles there consisted of marble units composed of two slabs of marble, having inlaid designs of colored marble, the whole quantity intended to be used as a border around the sanctuary wainscotting of a church. The court noted that the various pieces were designed, cut, and assembled for the purpose of being used as a border for the particular sanctuary for which they were ordered and later installed. After discussing the cited cases, the court concluded (p. 364):

> It is our opinion that the inlaid border in issue is a complete article in knocked-down condition, having a new use from that of the plain marble, and is therefore properly classifiable for duty purposes under the provision in paragraph 232(d), *supra*, for articles of which the component material of chief value is marble.

Here, the marble did not consist of miscellaneous pieces to be kept in stock or used interchangeably for various purposes, but was ordered for use in particular floors in a particular church in accordance with predetermined designs. The commercial invoice in protest No. 59/34582 states:

> Jobs for the St. Paul's Cathedral. * * *
> * * * Sanctuary marble Floor as design, various colored marble. * * *

The pieces for the floor in the upper church were numbered in conformity with the plans and the pieces for the flooring in the lower church were lettered to show the two types of marble involved. Such pieces were used primarily in their condition as imported. While there may have been some cutting for fitting purposes, this was a minor factor, so far as the record shows. There are some general statements to the effect that the pieces could have been used for other flooring or wainscotting or made into articles, but it is clear that the items were in fact designed, imported, and used for specific floors, not separately but as entireties. The component tiles were cut to shape and size for the particular floors and created completed floors when installed. Each tile, numbered to correspond to a numbered space assigned it on the plan, when in its assigned space made with its neighbor tiles a harmonious color pattern. This could not have been achieved if the tiles had been placed in any other setting, unless

by accident. Therefore, the tiles are classifiable as marble, wholly or partly manufactured into articles, under paragraph 232(d), *supra*, rather than as marble paving tiles under paragraph 232(b), *supra*.

The protests are overruled and judgment will be rendered for the defendant.