(C.D. 3171)

A. P. Baldechi & Son et al. v. United States

United States Customs Court, First Division

(Decided October 24, 1967)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

Before WATSON and BECKWORTH, Judges

BECKWORTH, Judge: The merchandise involved in these cases, consolidated at the trial, consists of marble slabs less than 1 inch thick, polished on the edges and one surface, in varying sizes and shapes. They were imported from Italy, Belgium, and Spain and entered at the port of Los Angeles on various dates in 1958, 1960, and 1961. They were assessed with duty at 21 per centum ad valorem under paragraph 232(d) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as marble, wholly or partly manufactured into articles, not specially provided for. It is claimed that the merchandise is properly dutiable at 7 cents per superficial foot under paragraph 232(b) of said tariff act, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential Proclamation No. 2888, 85 Treas. Dec. 138, T.D. 52476, as slabs of marble polished in whole or in part.

The pertinent provisions of the tariff act are as follows:

Paragraph 232(b) of the Tariff Act of 1930, as modified by T.D. 52373 and T.D. 52476:

Slabs and paving tiles of marble, breccia, or onyx:   Containing not less than four superficial inches:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

 If polished in whole or in part (whether or not rubbed):
  If not more than one inch in thickness____ 7 cents per superficial ft.

Paragraph 232(d) of the Tariff Act of 1930, as modified by T.D. 54108:

Marble, breccia, and onyx, wholly or partly manufactured into monuments, benches, vases, and other articles, and articles of which these substances or any of them is the component material of chief value, not specially provided for_____ 21% ad val.

The records in three previously decided cases have been incorporated herein: *United States* v. *Quality Marble & Granite Co. et al.*, 48 CCPA 50, C.A.D. 763; *United States* v. *Selectile Co., Inc., et al.*, 49 CCPA 116, C.A.D. 805; *Selectile Co., Inc.* v. *United States*, 54 Cust. Ct. 30, C.D. 2504.

The merchandise involved in the *Quality Marble* case consisted of square, rectangular, and round pieces of marble in various sizes:   60- by 20-inch rectangles, 42-inch rounds, 30- by 30-inch squares, 24- by 30-inch rectangles, and 18-inch rounds, polished on the edges and one surface. The corners, where the surface and the edges met, were slightly rounded or blunted. Plaintiff's witness testified that the rectangular pieces were used in the furniture and building trades for making various articles and that 90 percent of the rounds were sold to furniture manufacturers for use as table tops. The Government witness said that he had purchased rounds and rectangular pieces and sold them for table tops. The court held that the pieces were wholly or partly manufactured into articles, stating (pp. 52–53):

It has been established that ninety percent of the round importations have been manufactured for use as table tops and sold to furniture manufacturers in this country, that generally all of the importations are used in the condition in which they are imported, and that to use them otherwise would nullify part of the work which had already been done on them. We therefore are of the opinion that the merchandise is properly classifiable under paragraph 232(d).

The court then quoted extensively from a previous case, *Atlas Export Co., F. L. Kraemer & Co.* v. *United States*, 43 CCPA 122,

C.A.D. 618. In that case, the appellate court agreed with the court below that it was not necessary for merchandise to be dedicated to the manufacture of one specific article or class of articles to fall under paragraph 232 (d). The opinion went on to hold that some of the items which Congress mentioned specifically or considered to be covered by paragraph 232(d) might still be called slabs, such as partly manufactured marble benches, table tops, tombstones, and lamp bases, but that they were dutiable as wholly or partly manufactured articles.

The merchandise involved in *United States* v. *Selectile Co., Inc., et al, supra,* consisted of marble pieces 4 inches and 16 inches wide in varying lengths, polished on one surface and on three edges, and 6 feet 11-inch pieces polished on one surface and four edges. The court held the merchandise dutiable as slabs on the following grounds (pp. 119–120):

There is no question about the significant facts in this case. The imported marble is cut and polished according to the specifications of the importers for definite purposes. Being in the marble installation business, the importers found that the pieces of marble so cut and so polished were the most economical for their trade, a good part of which was installing marble splashes, pullman counters, tub surroundings, wainscoting, windowsills, thresholds, legs and other parts for mantels, toilet partitions, hearth aprons, and making table tops, by cutting and fitting the 4-inch and 16-inch pieces together. About 50 to 55 percent of the 4-inch and 16-inch pieces are installed as splashes and pullman tops after some work has been done in the shop before installation. The work consists of cutting to the proper length, polishing on the edges, cutting notches and slots. When marble toilet partitions are to be installed, polishing the rough side of the 6 foot, 11 inch pieces and rubbing to the proper thickness is required in addition to cutting to the desired size.

* * * * * * *

* * * we believe that the imported merchandise is nothing more than material which appellees stock in sizes most adaptable to their marble installation business. Under these circumstances, we are of the opinion that merchandise cannot be considered "articles" as contemplated by paragraph 232(d) of the Tariff Act of 1930. Rather, we believe that the importation should be classified as slabs of marble partly polished, within the purview of paragraph 232(b) of the Tariff Act of 1930.

The court distinguished the *Quality Marble* case on the ground that there 90 percent of the importations were sold to furniture manufacturers who used them as table tops in their imported condition, while in the case before it the pieces were used by importers in making various kinds of installations in buildings and were not used in their imported condition.

In *Selectile Co., Inc.* v. *United States, supra,* the merchandise consisted of marble slabs polished on one surface and all four edges in

sizes 20 by 48 inches and 20 by 42 inches. The court held that they were dutiable as slabs rather than partly manufactured articles on the ground that the evidence indicated that they were not imported for any particular job and were merely put in stock for further use. The court stated that the marble was not sold in the condition imported and was never used without further processing. It pointed out that defendant's witness testified that he had used marble slabs of the size involved as table tops without further processing, but he agreed that they could be used for other things and stated that he was not qualified to say for what other purposes they could be used. The court indicated that, because of the number of things for which the slabs could be utilized, they were none of those things in a state of partial manufacture, but were only material in slab form.

Many of the cases involving the classification of merchandise as marble slabs or as marble, partly manufactured into articles, were discussed in *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 54 Cust. Ct. 15, C.D. 2502. The court pointed out that the two competing provisions of the tariff act might, according to extrinsic circumstances, cover merchandise that could be identical. It pointed out that a decision on one entry is not *res judicata* in any other and that careful scrutiny of what the witness said in each case might alone provide explanation for differences in the result reached. It concluded (p. 22) :

Under these cases, the most significant factors in determining whether the imported merchandise consists merely of marble slabs or marble, wholly or partly manufactured into articles, are whether the imported slabs are assigned and were cut to occupy specific places in a detailed design; whether or not the merchandise as imported is of general utility and is equally available in various places where marble can be used, not just in a particular design; whether it is used in its condition as imported or must be further cut or shaped on the job; whether the last manufacturing step has been performed on the article *per se* prior to importation and there is nothing left to do but assemble it with other articles; whether excess pieces over those required for the job were imported.

In the instant case, plaintiffs called five witnesses :

Patrick J. Ryan, an importer of marble, granite, onyx, and slate products and an agent for some firms in Europe. He had been in the business approximately 12 years.

Albert S. Baldechi, a partner and owner of A. P. Baldechi & Sons, since 1958. This being a family business he had been in it, in a sense, most of his life. The firm imports marble in block or slab form, polished or unpolished.

Rene Maassen, president of Quality Marble & Granite Co., and Marble Decor Co., Inc., importers of marble, granite, slate, tiles, ceramics, mosaics, and affiliated building materials. He had been with

Quality Marble for 10 years and previously had been manager of the Scotstown Granite Co. in Montreal, Canada, for 8 years.

Frederick B. Cordova, Jr., president of Carrara Marble Co., importers, distributors, and contractors in the marble, granite, and onyx field, for almost 15 years.

John A. Burman, vice president and general manager of the Los Angeles division of Western States Stone Co., which is in the business of producing, marketing, and importing marble products and polished marble slabs.

Defendant called three witnesses:

George E. Shepherd, general manager of Italian Marble & Tile Co., which is engaged in the retail sale of marble and associated items and the installation of marble floors. He had been with that firm for 4 years and previously had been with Niccolino, a marble importing firm from 1951.

Loris J. Buccola, president of Crown City Table Co. for about 22 years. This firm manufactures only furniture, including marble-topped tables.

Mary Ann Scatch, manager of Brancusi California, Inc., for 11 years. This firm specializes in selling marble tables, dining tables, wall consoles, anything that can be made into a table with marble.

The merchandise involved here consists of marble pieces less than 1 inch thick, polished on the edges and one surface. Some of them are referred to on the invoices as table tops and others as polished marble slabs. They are either rectangular, square, or round in shape. The rectangular pieces are all 20 inches wide, varying in length from 42 to 60 inches, the bulk of them being 20 by 60 inches. The squares are either 20 by 20 inches or 30 by 30 inches. The rounds range from 18 to 48 inches in diameter. Most of these sizes were before the court in *United States* v. *Quality Marble & Granite Co. et al., supra,* but the sizes in *United States* v. *Selectile Co., Inc., et al., supra,* were different. The present case does include sizes the same as those in the second *Selectile* case. The edging between the polished face and the edges is swiped, rounded, or arrised. The witness Ryan explained:

> The technical term is what they call arrised, which means they take the arris off. When they saw the marble, it makes a very sharp point, and if they leave it this way, it unfortunately tends to chip off when touching against any item which might be hard, so they take off that arris.

JUDGE WILSON: By grinding or cutting?

THE WITNESS: By grinding it, or using sandpaper, or a carborundum wheel.

He added that removal of the arris is a normal procedure to prevent chipping.

Plaintiffs' witnesses imported marble in various sizes and conditions: Rough blocks or slabs, polished or unpolished, materials that have multiple uses; semifinished and finished marble. Mr. Cordova explained that a rough slab has quarry edges and is untouched by a finishing stone; that there are several categories of polished slabs, one where the surface only has been touched by finishing stones, and one where the surface and edges have been touched.

Defendant's witnesses were concerned with marble with a polished surface and polished edges in the sizes used primarily for furniture. The record indicates that the marble industry has tried to set up certain standard sizes for polished marble slabs and that slabs in such sizes are often carried as stock items; generally those thought to have multiple uses. The record also indicates that the term "table tops" is used to designate a certain type of marble slab and may be used to save writing or to respond to a pricelist. Mr. Ryan testified that, when he orders table tops, the pieces are to be used strictly as table tops. The merchandise involved here which he ordered is described on one invoice as "Arabescato marble slabs" and in the other as "perlato marble table tops."

Mr. Ryan, who sells to floorers, furniture manufacturers, and marble contractors, testified that he had seen 20- by 20-inch polished marble slabs used for flooring, for table tops, for cutting into strips to use as lining, for bases, for facing on paneling, and for bank fixtures. He did not know of anything in its physical characteristics that would limit its use to table tops. He said that the 20- by 48-inch slabs he brought in were used for walls, floors, for facing on fireplaces, for windowsills and counter tops. He had seen St. Florentine marble in sizes 20 by 60 inches used extensively in bathrooms, as table tops, as vanity tops, and as facing on bathtubs. When such material is used for table tops, the witness said it normally does not have to be further processed, but most furniture manufacturers drill the material on the bottom to attach it to the frame.

Mr. Baldechi testified that some of the merchandise involved here was ordered for stock and some for a specific purpose. In one case the merchandise was ordered specifically for table tops, but some material went to a marble contractor.

The witness said he had become familiar with the uses that can be made from 20- by 60-inch and 24- by 72-inch polished slabs, and had seen them used for fireplace hearths, wall veneering, pullman tops, and floors. The 20- by 62-inch size could be eliminated from the table top market because it could not take the standard frame. The particular ones he imported were used on dresden tops. He has seen them used for decks, table tops, flooring, and fireplaces.

He stated that the polishing of the edges does not limit the use of slabs; that it was inexpensive to have them polished, and that it gave them a little more versatility. He said they could be butted up one against the other with a slight grout filler.

He stated that he sold to marble contractors and furniture manufacturers but that, in the last 4 years, the market in table tops had declined. In his experience, the rounds were used almost exclusively as table tops, and the 20- by 60-inch rectangular size which fits the standard table frame had been sold *extensively* for such use.

Mr. Maassen, who had been in the marble and granite business for 18 years, testified that his firm imports marble slabs, polished on one face and four edges, and stocks them in two warehouses. He determined what sizes to stock by the fact that the furniture trade has established certain commonly used sizes, such as 36- and 42-inch rounds. He said that the use of "marble table tops" in 1958–59 was for table tops but has since become varied and that there is nothing about the 60- by 20-inch rectangle which would limit its use to table tops. He was familiar with other uses such as illustrated by exhibits 2 through 7. He stated that the arrised edge does not limit the uses of a polished marble slab, except for abutment; then additional work would be required. He testified:

Q. Are you familiar with what use is made of this merchandise sold by you or your representatives?—A. The market which we have established, in my opinion, utilized them 95 percent for marble table tops.

Q. Now, you spoke about 60 by 20 size rectangles. They are used, are they not, for table tops?—A. Yes, sir.

Q. You sell them for table tops?—A. Predominantly, yes, sir.

Q. Would you approximate what you mean by predominantly?—A. I should say 80 to 85 percent of the 20 by 60 marble tops moving out of our warehouses are used for furniture.

Q. By furniture, you mean table tops?—A. Yes.

According to the witness, in his organization the term "polished marble slabs" refers to a slab of marble in an unlimited size with the face polished only, but the edges left rough. A piece cut to size is referred to as a piece of marble. The articles which he sells for table tops, rounds, and 60- by 20-inch rectangles, with the edges polished, are finished pieces of marble. The physical characteristics of a finished piece, size 20 by 60 inches, do not limit its use to table tops.

Mr. Cordova testified that he was familiar with the merchandise invoiced as marble table tops on the entry in protest 62/8412; that it was a trial order; that he was not, in fact, ordering marble table tops; and that he did not sell this particular shipment of 20- by

60-inch pieces to the furniture trade. In fact, he did only a limited amount of business with the furniture trade.

The witness had seen 20- by 60-inch size used for fireplaces, one slab as is for the hearth and another cut to form the header and the upright pieces.

He has made a lot of pullman tops with the 20- by 60-inch pieces by cutting the ends, making a small oval for the bowl, and using the remaining parts for splashes. He had also used 20 by 60's for wall veneer, in which case anchor holes must be drilled.

Mr. Burman testified that he brings in 20- by 60-inch rectangles primarily for use in constructing homes or buildings, where they are used for fireplace facings and pullman tops. Normally, his stock material does not have to be further fabricated for these uses, except cutting, or polishing an edge. The swiping of the corner of the polished marble slabs does not limit their use. He has also seen his stock material used to make table tops. No fabrication is needed for such use.

Defendant's witness, George E. Shepherd, testified that merchandise in sizes such as that at bar is used primarily for furniture in his particular trade. In the condition that his firm imports marble in these sizes, with a polished surface and polished edges, it is invariably put on table bases, counter tops, cabinets, credenzas, strictly furniture.

He testified:

Q. Insofar as your personal knowledge is concerned, what percentage of your importations did you use of the 20 by 60s for table tops?—A. I would say 90 per cent.

Q. And you always used them, when you say that, in their condition as imported?—A. Right.

He could not speak with knowledge as to the 20- by 48-inch size and the 20- by 60-inch size.

In using the 20- by 60-inch sizes for tables, his firm does not normally do anything to affix them to the legs. They have rough undersides and create their own traction. The weight holds them up. Sometimes a piece of wood is attached to the base and the marble cemented to it.

When importing marble in size 20 by 60 inches, he designates it as table tops. When ordering from an American organization, he just asks for 20- by 60-inch sizes. The 20- by 60-inch sizes he imports are definitely dedicated to table tops.

The witness stated that a table top to a furniture man invariably has a slightly rounded corner in addition to the arrised edges. He explained that, if four pieces of marble with rounded corners are

put together, there will be a circle the size of a dime where the corners meet.

He said that the items brought in as table tops are not totally restricted to that use. They are capable of use as lamp bases, pullman tops, veneers, and hearths after work has been done on them. The rounded corner can be used in the front of pullman tops, but the rear would have to be ground down or sliced off, or it would not fit up against the wall. If precut marble is used for veneers, there is extra work required on it because of the rounded corner. It has to be cut at right angles for a close fit or grouting could be placed along the edges to fill the spaces. Although he considered rounds definitely dedicated to table tops, he had seen them used occasionally for free standing fireplaces or as floor liners.

Mr. Buccola testified that his firm used marble in varying sizes of rounds, rectangles, and ovals, by placing them on wooden bases and using them as table tops, as illustrated in collective exhibits A, B, C, D, and E. In some cases, the marble is merely set on the bases, and in others holes are bored in it to affix it to the table base. In about 50 percent of the rounds, holes are bored and the bases cemented to the marble.

In his personal experience, 100 percent of the rounds are used as table tops, and almost 100 percent of the 20- by 60-inch size are so used. Occasionally, a 20- by 60-inch size is used for a fireplace hearth.

Mrs. Scatch testified that her firm used marble rounds and rectangles in the sizes before the court as table tops. The illustrations in exhibits A, B, C, D, and E depict ways in which marble is used by her organization. In the manufacture of table tops, nothing is done to attach the marble to the base; its weight is sufficient. Cementing is not done except for small sizes.

In rebuttal, Patrick J. Ryan testified that originally rounds were almost all used for table tops. However, 6 years ago he had visited a fabricating firm in Europe and had noticed sizes not standard for table tops which he was told were being shipped for use in terrazzo floors. Since then he had noticed them in this country in floors and as bases for freestanding fireplaces. However, he said that the majority were still used for table tops. He had promoted a design depicting flooring with rounds and had seen such an installation in residences, but did not know the size of the marble nor its condition as imported.

The round pieces of marble involved herein are in the same sizes and condition as those before the court in *United States* v. *Quality Marble & Granite Co. et al., supra.* The evidence there established that 90 percent of them were used as table tops. The evidence in the instant case is substantially to the same effect. A few other uses were mentioned by some of the witnesses, but it is clear that they were exceptional

and it is not clear that the pieces so used were in the same sizes and condition as the present merchandise.

Rectangular and square pieces were also before the court in the *Quality Marble* case and were held to be dutiable as marble, wholly or partly manufactured into articles, on the ground that they were used in their imported condition and that to use them otherwise would nullify some of the work that had been done on them. In the instant case, there is evidence that marble pieces in the sizes before the court were imported by or sold to furniture manufacturers for use as table tops and were also imported by or sold to dealers and marble installers for use in homes and other buildings, principally as pullman tops and splashes and wall veneers. When used as table tops, normally no further fabrication is necessary. The marble pieces are merely placed upon the bases. Sometimes holes are drilled into which the legs fit or the marble is cemented to the base. For other uses, the pieces may have to be cut to fit, or the edges cut straight, or grouting used to fit pieces together.

A reading of the record in this case and those in the incorporated cases, leaves the distinct impression that there are articles in certain standard sizes, polished on the edges and one face, with the edges arrised, which are known and recognized by those in the marble industry and the furniture trade as table tops. One of the witnesses here stated in fact that the standard sizes were established by the furniture industry.

Obviously, these pieces could be used for other purposes if further work were done on them. In many cases, however, some of the work done on them abroad, such as the polishing of an edge or the rounding of the arris, would have to be eliminated.

*Atlas Export Co. et al.* v. *United States, supra,* calls attention to the fact that the Summary of Tariff Information, 1929, in discussing paragraph 233 of the Tariff Act of 1922 (the predecessor of paragraph 232(d), *supra*), stated (p. 569) :

> Manufactures of marble, breccia, and onyx, n.s.p.f., cover all manufactures of marble not provided for in paragraph 232; * * *. The remaining manufactures include, among other things, monuments, tombstones, table tops, drain boards, benches, urns, illuminating units for artificial lighting, lamp bases, ink wells, and many art and novelty pieces.

A similar statement is made in the Summaries of Tariff Information, 1948 (vol. 2, part 2, page 152).

It appears, therefore, that Congress intended a marble slab which had been so far processed as to be recognizable as a partly manufactured monument, tombstone, table top, drainboard, bench, lamp base, inkwell, or other article to be dutiable under paragraph 232(d) as

marble, wholly or partly manufactured into articles, rather than under paragraph 232(b) as a polished slab. See *Atlas Export Co. et al.* v. *United States, supra* (p. 125), where the court stated it was in accord with the opinion of the majority of the court below that, for an article to be a partial manufacture, it was sufficient that it had been processed to a point where it had a distinctive character different from that possessed by the original material.

Plaintiffs' case is based principally on a claim that confusion has been created by an erroneous *obiter dictum* in *Atlas Export Co. et al.* v. *United States, supra,* perpetuated in the majority opinion in *Quality Marble & Granite Co. et al.* v. *United States, supra;* and in *C. J. Tower & Sons of Buffalo, Inc.* v. *United States, supra;* and *R. L. Swearer Company* v. *United States,* 54 Cust. Ct. 24, C.D. 2503.

Plaintiffs' claims are that in the *Atlas* case the court concluded incorrectly that paragraph 232(d) is more specific than paragraph 232(b); that it misconceived the intent of Congress; that it was not the intent of Congress that polished marble slabs should fall into the catchall clause of paragraph 232(d) and that merchandise is dutiable according to its condition as imported and not in accordance with what the importer does with it.

The scheme of paragraph 232 is to progress, as is often the case in tariff acts, from the raw material, marble in blocks, rough or squared, through various intermediate stages to the manufactured articles. Slabs are intermediate articles, and there may be some difficulty in determining when a polished slab becomes a partly manufactured article, but when it does so, it is clearly more specifically provided for in paragraph 232(d). As stated in the *Atlas* case, it can hardly be denied that partly manufactured marble benches, specifically mentioned in paragraph 232(d), would consist of slabs and that the same is true of the table tops and other articles mentioned in the Summary of Tariff Information.

In a case decided under the Tariff Act of 1922, which provided for slabs, rubbed in whole or in part, but not for polished slabs, it was held that polishing took them out of the provision for slabs and that they were, therefore, dutiable as marble partly manufactured. *Richard Shipping Corporation* v. *United States,* 17 CCPA 417, T.D. 43865.

Furthermore, we are of the opinion that the court, in the *Atlas* case, did not misconceive the intent of Congress. As stated above, it is our view that Congress intended any article which had been so far processed as to be recognizable as a partly manufactured monument, table top, or other article, to be dutiable under paragraph 232 (d) as a manufacture of marble rather than under paragraph 232(b) as a polished slab.

We are further of the opinion that neither the *Atlas* case, nor those that follow, set up a subjective test for the classification of merchandise. Uses of the particular types of marble before the court were considered in order to determine what such pieces were—slabs or partly manufactured articles. The fact that one such piece was used in the manufacture of furniture, or another in a pullman top is, of course, immaterial.

In *United States* v. *Quon Quon Company*, 46 CCPA 70, C.A.D. 699, the merchandise consisted of woven rattancore articles, designed, produced, sold, and used as table tops. It was classified by the collector under paragraph 411 of the Tariff Act of 1930 as baskets and was claimed to be dutiable as parts of furniture under paragraph 412. The court said that the real problem was whether the imported articles were in fact "baskets". It then stated (pp. 73–74) :

The Government would have us shut our eyes to the evidence as to what the imported articles are used for, apparently only for the reason that the term "baskets" in paragraph 411 provides for baskets *by name*. We have been unable to find in the Government's brief citation of any authority requiring us to do this. While unhesitatingly granting the truth of the contention that "baskets" in the tariff act provides for baskets "eo nomine," this does not help us in the least to decide whether the imported articles *are* baskets. We are not so trusting of our own notions of what things are as to be willing to ignore the purpose for which they were designed and made and the use to which they were actually put. Of all things most likely to help in the determination of the identity of a manufactured article, beyond the appearance factors of size, shape, construction and the like, use is of paramount importance. To hold otherwise would logically require the trial court to rule out evidence of what things actually are every time the collector thinks an article, as he sees it, is specifically named in the tariff act.

* * * The record clearly establishes that the articles at bar are sold and used only as tops of coffee or cocktail tables and are not likely to be used as baskets. It is not disputed that upon assembly with iron bases of domestic manufacture the combination is furniture. In view of our holding, *supra*, that the use of the merchandise cannot be ignored in determining whether it is properly classifiable as baskets, and the uncontroverted evidence of actual use of the goods as parts of furniture, namely, table tops, we feel that appellee has sustained its burden of proving that paragraph 412, parts of furniture, more accurately describes the articles. * * *

On the basis of the testimony in this case and the records in the incorporated cases, and in view of the size, shape, construction, and use of the marble pieces involved in the instant case, the fact that they have been polished on the edges and one surface, and the arris removed, and the fact that they are ready for use as table tops without further processing, and are predominantly so used, we find that as

imported they have been so far processed as to be identifiable as table tops, partly or wholly manufactured and are, therefore, dutiable under paragraph 232(d), *supra*, as marble wholly or partly manufactured, rather than under paragraph 232(b), *supra*, as polished marble slabs.

For the reasons stated, the protests are overruled. Judgment will be entered for the defendant.