The claim for classification under item 204.50 is overruled.

Judgment will enter accordingly.

(C.D. 4493)

JOHN H. FAUNCE PHILA., INC. v. UNITED STATES

Court No. 63/8398.

(Decided December 19, 1973)

*Allerton deC. Tompkins* for the plaintiff.

*Irving Jaffe,* Acting Assistant Attorney General (*John N. Politis,* trial attorney), for the defendant.

RAO, Judge: The merchandise involved in this case consists of rectangular pieces of marble imported from Italy, ¾-inch thick, 20 inches wide, in lengths of 13, 30, 42, 54, and 60 inches, with square edges, polished on the top and four sides, described on the invoice as "All

White Type P marble slabs." It was assessed with duty at 21 per centum ad valorem under paragraph 232(d) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108 (1956). It is claimed that the merchandise is properly dutiable at 7 cents per superficial foot under paragraph 232(b) of said tariff act, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373 (1949), and Presidential Proclamation No. 2888 of May 13, 1950, 85 Treas. Dec. 138, T.D. 52476 (1950).

Round marble pieces were also included in the shipment and are listed on the invoice, but they are not involved in this litigation.

The pertinent provisions of the tariff act, as modified, are as follows:

Paragraph 232:

(b) Slabs and paving tiles of marble, breccia, or onyx: Containing not less than four superficial inches:

\* \* \* \* \* \* \*

If polished in whole or in part (whether or not rubbed):
If not more than one inch in thickness _____ 7¢ per superficial ft.

(d) Marble, breccia, and onyx, wholly or partly manufactured into monuments, benches, vases, and other articles, and articles of which these substances or any of them is the component material of chief value, not specially provided for__ 21% ad val.

At the trial, plaintiff called E. Jay Ferry, importer of the merchandise. He testified that in 1961–62 he was an importer of marble from several countries, manufactured various items out of marble, and was in the marble contracting business. He had been in that business since 1948 and started importing marble in 1954. He produced a sample of the imported merchandise and testified that it was an imitation Bianco, Type P, white with very little gray, 20 by 13 inches in size, with square edges but with the top edges eased because it had been polished. He said it was representative of the items on the invoice except for size.

The witness testified that he used the imported merchandise by cutting it into pieces to manufacture columns, pilaster bases, surbasing, and window sills. He masked the outside of bathtubs with it, and made bureau tops, buffets, tables, risers, and treads. In order to shape the pieces for their ultimate use, he sawed, bored, ground, drilled, and polished them, and sometimes glued or cemented two pieces together.

In some cases, he was able to use the marble in the condition as imported without further processing. In other applications, such as steps, window sills, thresholds, and vanity tops for sinks, he shaped the pieces to fit the requirements of the job they were scheduled for.

He considered the imported merchandise as material for various applications. It was imported as inventory—to supply his business. He did not order the merchandise for the needs of particular customers but to replenish his stock. He bought the marble in the imported sizes because after years of experience he had found that he could get the greatest use from these sizes to produce articles to fill his orders. The 20-inch piece could be cut into multiples which were suitable for the items he manufactured. It could be cut for buffets, serving tables, and dressing tables. He explained that bureaus and buffets measure something less than 20 inches, so a 20-inch piece furnished enough material to make them. Sometimes he glued two pieces together, and ground a vein line in order to join them attractively. In other cases, he could make serpentine or contoured shapes. In making stair risers, material would be left over, but it could be used for sills or scrap.

Mr. Ferry testified that he bought marble by the block and would take all the particular block would yield and thus get a special price. He ordered merchandise 20 inches wide, in certain lengths, polished on all four edges and one side, leaving open the quantity. He said the prices of marble are based on hardness and that he purchased at $1 per square foot. He ordered the pieces with the edges polished because it was cheaper to have them polished abroad. In some cases he could use the marble as it was so there was no disadvantage in having polished edges. He said if he were buying marble for a specific purpose, and knew that certain sides were going to be butting together, it would be less costly if they were not polished.

Mr. Ferry stated that the round slabs he imported were used almost without exception—95 percent—in their imported condition, as tabletops. The rectangular pieces could have been used for tabletops, without reworking, if they were of the size called for. He said that 60 to 65 percent of the rectangular pieces he imported were used for items other than tables. He added that for some types of tables, all that was necessary was to insert or glue the marble in the frame of the table, but that in other instances the marble had to be processed further or bored or routed to accommodate a piece of steel to add structural support.

Defendant called Arthur P. O'Neil, proprietor of Arthur P. O'Neil Associates, importers and wholesalers of marble. He became involved with this company in 1972 but had previously had experience with other importers and wholesalers of marble. He had purchased and sold marble and was familiar with processing it. In his opinion, the invoice herein represented a typical finished marble tabletop order, because

the sizes were typical tabletop sizes. The fact that the marble was polished on all edges and on one side further indicated that the pieces were finished tabletops.

He said that the imported merchandise could be used as tabletops in its imported condition. He had imported tabletops similar to these and had seen the final products. He had also seen tabletop sizes reworked the way the previous witness indicated. He did not manufacture tabletops himself and did not have a plant in this country for processing marble. He had sold to furniture manufacturers and marble manufacturers who fabricate for furniture manufacturers. His experience is directed toward importing and wholesaling what he regards as tabletop sizes. He had seen his marble used as tabletops without any work done on them before they were installed.

Whether imported marble or onyx pieces are classifiable as slabs under paragraph 232(b), *supra*, or as marble or onyx wholly or partly manufactured into articles under paragraph 232(d), *supra*, has been before the courts on a number of occasions. *Atlas Export Co. et al.* v. *United States*, 43 CCPA 122, C.A.D. 618 (1956); *United States* v. *Quality Marble & Granite Co. et al.*, 48 CCPA 50, C.A.D. 763 (1960); *United States* v. *Selectile Co., Inc., et al.*, 49 CCPA 116, C.A.D. 805 (1962); *A. P. Baldechi & Son* v. *United States*, 56 CCPA 112, C.A.D. 963 (1969).

In those cases, a distinction was made between marble used as material to make various marble articles and marble which was used in its imported condition as a wholly or partly manufactured article, such as a tabletop.

In *Atlas Export Co. et al.* v. *United States*, *supra*, the court pointed out (pp. 126–127):

> * * * [I]t is abundantly clear that some of the items which Congress considered to be covered by paragraph 232(d) might still be called "slabs" in the general meaning of that term. For example, it can hardly be denied that partly manufactured marble benches, specifically mentioned in paragraph 232(d), would consist of "slabs." The same is true of the table tops, tombstones, and lamp bases, mentioned in the *Summary of Tariff Information.* * * *

In *United States* v. *Quality Marble & Granite Co. et al.*, *supra*, the merchandise consisted of square, rectangular, and round pieces of marble ¾ and ⅝ of an inch thick. The larger pieces were 60- by 20-inch rectangles, 42-inch rounds, and 30- by 30-inch squares. The smaller sizes were 24- by 30-inch rectangles and 18-inch rounds. All the pieces were polished on the edges and one face. The edges were not sharp at the corners, but were slightly rounded or blunted, forming an arris.

It was established that 90 percent of the rounds had been manufactured for use as tabletops and sold to furniture manufacturers; that generally all the importations were used in their condition as imported, and that to use them otherwise would have nullified part of the work that had already been done on them. Therefore, the court held that they were classifiable under paragraph 232(d), *supra*, as marble, wholly or partly manufactured into articles.

In *United States* v. *Selectile Co., Inc., et al., supra*, the merchandise consisted of three kinds of marble pieces:

1) 4-inch slabs in varying lengths from 30 inches to 60 inches,
2) 16-inch slabs in varying lengths from 30 inches to 60 inches, and
3) slabs 6 feet, 11 inches by from 6 feet, 4 inches to 6 feet, 7 inches.

The 4- and 16-inch widths were polished on one surface and three edges, and the large slabs were polished on one surface and four edges. The court, after considering the testimony, stated (pp. 119–120):

> There is no question about the significant facts in this case. The imported marble is cut and polished according to the specifications of the importers for definite purposes. Being in the marble installation business, the importers found that the pieces of marble so cut and so polished were the most economical for their trade, a good part of which was installing marble splashes, pullman counters, tub surroundings, wainscoting, windowsills, thresholds, legs and other parts for mantels, toilet partitions, hearth aprons, and making table tops, by cutting and fitting the 4-inch and 16-inch pieces together. About 50 to 55 percent of the 4-inch and 16-inch pieces are installed as splashes and pullman tops after some work has been done in the shop before installation. The work consists of cutting to the proper length, polishing on the edges, cutting notches and slots. * * *
>
> *       *       *       *       *       *       *
>
> * * * [W]e believe that the imported merchandise is nothing more than material which appellees stock in sizes most adaptable to their marble installation business. Under these circumstances, we are of the opinion that the merchandise cannot be considered "articles" as contemplated by paragraph 232(d) of the Tariff Act of 1930. Rather, we believe that the importation should be classified as slabs of marble partly polished, within the purview of paragraph 232(b) of the Tariff Act of 1930.

The court distinguished the *Quality Marble* case, stating (p. 120):

> * * * There, 90 per cent of the importations were sold to furniture manufacturers who used them as table tops *in their imported condition.* Here we have pieces of marble used as material by the importers in making various kinds of marble installations in buildings and, furthermore, the importations are not used by the importers in their imported condition. [Emphasis quoted.]

In *A. P. Baldechi & Son* v. *United States*, 59 Cust. Ct. 377, C.D. 3171 (1967), *aff'd*, 56 CCPA 112, C.A.D. 963 (1969), the merchandise consisted of marble pieces, polished on one surface and all four sides. The rectangular pieces were 20 inches wide, in lengths of from 42 to 60 inches, and the edges were rounded or arrised. The square pieces were 20 by 20 or 30 by 30 inches and the rounds from 18 to 48 inches in diameter. The court below found that the imported marble pieces were ready for use as tabletops without further processing, were predominantly so used, and had been so far processed as to be identifiable as tabletops, partly or wholly manufactured. They were held dutiable under paragraph 232(d), *supra*, as marble, partly or wholly manufactured into articles. The court of appeals affirmed on the ground that the facts were more consistent with those in *United States* v. *Quality Marble & Granite Co. et al.*, *supra*, than those in *United States* v. *Selectile Co., Inc., et al.*, *supra*.

In the instant case, some of the rectangular pieces are in the same sizes and the same condition (polished on one surface and four edges, with the edges eased) as some of those in *United States* v. *Quality Marble & Granite Co. et al.*, *supra*, and *A. P. Baldechi & Son* v. *United States*, *supra*. None is in the same size as those in the *Selectile* case. Mr. O'Neil said the sizes here were typical tabletop sizes and the polishing indicated they were finished tabletops. Mr. Ferry admitted that all of the pieces could have been used as tabletops without reworking and that 35 to 40 percent were so used, some requiring further processing. He used the balance to make various articles, after cutting and other necessary work. He did not order the merchandise for any particular job but kept it in stock. He said the sizes were those most useful in his marble installation business.

There is nothing in the record, however, to indicate that the importer's usage of marble pieces of these sizes and condition for various applications was a common practice in the trade. Mr. O'Neil's testimony is some indication to the contrary. In the *Baldechi* case, this court said that the record there gave the distinct impression that there were articles in certain standard sizes, polished on the edges and one face, which were known and recognized by those in the marble industry and the furniture trade as tabletops, and that while such pieces could be used for other purposes if further processed, some of the work done abroad would then be eliminated. (59 Cust. Ct. 377, C.D. 3171, p. 387.)

In the course of the opinion this court cited *Atlas Export Co. et al* v. *United States*, *supra*, the Summary of Tariff Information, 1929, and the Summaries of Tariff Information, 1948, and stated (pp. 387–388, 389):

> It appears, therefore, that Congress intended a marble slab which had been so far processed as to be recognizable as a partly

manufactured monument, tombstone, table top, drainboard, bench, lamp base, inkwell, or other article to be dutiable under paragraph 232(d) as marble, wholly or partly manufactured into articles, rather than under paragraph 232(b) as a polished slab. * * *

*   *   *   *   *   *   *

We are further of the opinion that neither the *Atlas* case, nor those that follow, set up a subjective test for the classification of merchandise. Uses of the particular types of marble before the court were considered in order to determine what such pieces were—slabs or partly manufactured articles. The fact that one such piece was used in the manufacture of furniture, or another in a pullman top is, of course, immaterial.

While the importer in the instant case used his merchandise for various purposes, the evidence establishes that it was in tabletop sizes, polished on one surface and four edges, with the edges eased; that it was ready for use as tabletops in its imported condition, and that a substantial quantity was so used. The sample appears to be a finished piece of marble. Most of the sizes were the same as those of marble pieces held to be marble manufactured into articles in prior cases. Therefore, on the record presented and on the authority of the cited cases, I hold that the merchandise before the court is properly classifiable under paragraph 232(d), Tariff Act of 1930, as modified, as marble, wholly or partly manufactured into articles.

The action is dismissed. Judgment will be rendered accordingly.