(C.D. 4730)

BAR & BARBEQUE PRODUCTS, INC. *v.* UNITED STATES

Court No. 75–4–00845

(Decided January 16, 1978)

*Glad, Tuttle & White* (*T. Randolph Ferguson* of counsel) for the plaintiff.
*Barbara Allen Babcock,* Assistant Attorney General (*Sidney H. Kuflik,* trial attorney), for the defendant.

BOE, Judge: Before the court for determination are plaintiff's motion for summary judgment and defendant's cross-motion to dismiss on the jurisdictional ground that the plaintiff was not the proper party to file the protest.[1]

---

[1] Plaintiff's initial motion sought judgment on the pleadings under rule 4.9. However, both parties have presented to the court for its consideration matters outside of the pleadings in the nature of affidavits. Accordingly, pursuant to rule 4.9, plaintiff's original motion shall be treated as one for summary judgment under rule 8.2.

The controversy underlying this action concerns the proper classification of battery-operated slot machines. The articles were classified under item 737.40, TSUS, as modified by Presidential Proclamation 3822, T.D. 68–9, with duty at the rate of 17.5% ad valorem. Plaintiff claims that the merchandise is properly classifiable under item 734.20, TSUS, as modified, with a 5.5% ad valorem rate of duty. In its answer to the plaintiff's complaint, the defendant admits that the merchandise had been improperly classified, and consents to the entry of judgment sustaining the plaintiff's claimed classification under item 734.20, TSUS, as modified. Subsequently and in response to plaintiff's initial motion for judgment on the pleadings, the defendant filed its cross-motion to dismiss. Thus, the sole issue presented herein is whether the plaintiff has standing under 19 U.S.C. § 1514(b)(1) to file a protest and is the proper party to prosecute this action.

At the time of the entry of the merchandise involved in this case, James G. Wiley Co. (Wiley), a customhouse broker, was listed on the consumption entry as the importer of record and the nominal consignee. The entry was made for the account of the plaintiff and, on the entry form, the plaintiff was declared to be the actual owner of the merchandise. Following liquidation, the plaintiff, not Wiley, filed the administrative protest objecting to the classification made by the Customs Service. The defendant acknowledges that the plaintiff is the actual owner and ultimate consignee of the merchandise in question. It does not allege in its motion to dismiss that it has been misled in any manner by the filing of the instant protest. The defendant's sole contention is that as the owner of imported merchandise the plaintiff is not among those persons authorized to file the protest under 19 U.S.C. § 1514(b)(1) which provides in part:

> * * * protests may be filed by the importer, consignee, or any authorized agent of the person paying any charge or exaction * * *.

The defendant in urging its motion to dismiss ignores recent decisions which clearly demonstrate that the plaintiff has standing to file the instant protest. *See Pasco Terminals, Inc.* v. *United States*, 65 CCPA—, C.A.D. 1201 (decided December 15, 1977); *United States* v. *Wedemann & Godknecht, Inc. a/c Atwater Throwing Co.*, 62 CCPA 86, C.A.D. 1151, 515 F. 2d 1145 (1975); *Mohawk Recreation Products, Inc.* v. *United States*, 77 Cust. Ct. 180, C.R.D. 76–13 (1976); *Hancock Gross Mfg., Inc.* v. *United States*, 75 Cust. Ct. 188, C.R.D. 75–6, 400 F. Supp. 813 (1975); *Baylis Brothers Co., etc.* v. *United States*, 75 Cust.

Ct. 89, C.D. 4611, 400 F. Supp. 940 (1975). The rationale in these cases indicate that one in the position of the instant plaintiff has the standing to file an administrative protest as the "agent of the person paying [the] * * * charge or exaction," that is, the importer of record or nominal consignee.[2]

The statement contained in *United States* v. *Wedemann & Godknecht, Inc., supra,* pertaining to the relationship of the appellee therein (a customhouse broker) to an associate employed to enter merchandise and pay duty thereon at the outports (Allen Forwarding Co.), indeed, more than serves as judicial approbation of the plaintiff's act in filing the protest in the instant action:

> * * * While there is no evidence of specific appointment of Wedemann & Godknecht, Inc., to act as agent of Allen Forwarding Co. in filing protests, it would have been a work of supererogation to have made such an appointment in view of the relationship of these customs brokers to each other and to the business of Farbenfabriken Bayer and its domestic customers. Those relationships were such as to reduce to an absurdity the strange statement in the Government's brief that "Wedemann & Godknecht Inc. was a stranger to the entry transaction * * *." On the contrary, the facts demonstrate that Wedemann & Godknecht, Inc., was in the driver's seat throughout, selecting out-port brokers to represent it and its client, employing lawyers to file protests as necessary, and generally looking after the customs business of FFB. Allen Forwarding Co. did not have to appoint it to file protests as its agent because Wedemann & Godknecht, Inc., was making the decisions and when it filed the protests on the Philadelphia importations it must have done so as the agent of "the person paying such charge." Although it did so without specific request or appointment, we think the "ratification" by Allen Forwarding Co. cleared up that question, both confirming the agency relationship within the meaning of section 514 and adopting the action taken as its own. [62 CCPA at 91.] [3]

It would appear unnecessary, however, to base this decision solely upon the tenuous and circuitous reasoning that the plaintiff acted as Wiley's agent in filing the protest. The plaintiff is the acknowledged owner of the imported merchandise. As owner, the plaintiff hired Wiley to facilitate the entry process but, nevertheless, retained ultimate control over the filing of protests to contest the amount of the duties assessed since it (plaintiff) was the party which ultimately paid the duty by reimbursing Wiley.[4] We are unaware of any decision of this court or our appellate court which has barred the owner of

---

[2] Paragraph nine of the affidavit of William R. Fielding, vice-president of James G. Wiley Co., states that the plaintiff "has acted as agent for James G. Wiley Co. in filing protests or having had filed protests on its behalf pursuant to Section 514 of the Tariff Act of 1930, as amended."

[3] The affidavit of William R. Fielding, vice-president of the James G. Wiley Co., clearly states that Wiley subsequently ratified the action of the plaintiff in filing this protest.

[4] *See* Fielding Affidavit, ¶7.

imported merchandise from filing a protest. Indeed, no reasonable interpretation of section 1514(b)(1) would lead to the conclusion that the Congress intended to prohibit a *bona fide* owner of imported property from personally protecting or enforcing his proprietary interests in a court of the United States, merely because he may have elected to appoint an agent in the form of a customs broker to assist in the administrative requirements incident to the importation of the merchandise. Particularly is this true, where, as it appears in the instant action, the government, from the time of the entry of the merchandise in question, has been aware of the true identity of the owner and ultimate consignee thereof. No failure to disclose, covert or otherwise, has caused the government to sustain any unwarranted administrative burden.

Although customs law by reason of its specialized nature at times may require a "singular" construction and interpretation, the basic principles of the law of agency, contracts and property, upon which the fundamental rights of an individual are so often predicated, can neither be overlooked, lightly dismissed nor declared inapplicable. Thus, in view of the fact that the plaintiff fully reimbursed Wiley for all the duties paid, this court is of the opinion that the plaintiff may be considered to be "the person paying any charge or exaction" within the meaning of 19 U.S.C. 1514(b)(1).

In a decision relating to the interpretation of section 1514(b)(1) and the persons having standing thereunder, the United States Court of Appeals, Second Circuit, in the case of *Patchogue-Plymouth Mills Corporation* v. *Durning*, 101 F. 2d 41 (1939), and appropriately referred to by Judge Miller in his concurring opinion in the *Wedemann* case, points out the absurdity in failing to recognize the applicability of the law of agency relating to the principal and his agent. In so doing, the court stated:

> * * * To be sure the statute speaks of the agent of the person paying such charge but that includes the principal for otherwise substance would be subordinated to mere language and the absurd result would be reached that an agent would be given power to file a protest for a principal who, not being empowered to file one himself, could have no authority to authorize an agent to do it. Besides that, this plaintiff is a corporation which had to act by its agents. [101 F. 2d at 43.]

The plaintiff as owner of the merchandise in question not having been precluded by section 1514(b)(1) from filing the protest and from instituting the within action, the motion of the plaintiff for summary judgment, accordingly, is hereby granted and the motion of the defendant to dismiss for lack of jurisdiction is hereby denied.

Let judgment be entered accordingly.